588 So.2d 1348 (1991)
STATE of Louisiana, Appellee,
v.
Jerome KENNON, Appellant.
No. 22891-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*1349 Jerome Kennon, in pro. per.
Indigent defender Bd. by Wm. Rick Warren, for appellant.
William J. Guste, Jr., Atty. Gen., James M. Bullers, Dist. Atty., Charles E. McConnell, Asst. Dist. Atty., for appellee.
Before MARVIN, VICTORY and STEWART, JJ.
VICTORY, Judge.
This appeal arises from a conviction of aggravated rape for which defendant, Jerome Kennon, was sentenced to life imprisonment. Kennon appeals his conviction complaining (1) the trial court erred in allowing him to represent himself, (2) the trial court erred in allowing the prosecutor to argue in its closing statement that the defendant would have raped other individuals, and (3) that the evidence was insufficient to support the conviction. We affirm.

FACTS
On February 17, 1990 at approximately 10:00 a.m., Christina Wylle reported to the Webster Parish Sheriff's Office that she had been raped at her trailer near the city of Doyline. Sheriff deputies and local officials responded to the call and elicited a detailed description of the perpetrator from the victim. Christina told the officers that a man came to her door looking for work, then forced his way into her home, and raped her while holding a kitchen knife to her throat. From the description, the officers suspected the defendant as the perpetrator. Following Kennon's arrest on the same day, Christina identified him in a lineup.
On February 21, 1990, Kennon appeared in court on a tentative charge of aggravated rape and was referred to the Indigent Defender Board for appointment of counsel. On February 22, 1990, a Webster Parish Grand Jury returned a true bill against the defendant, charging him with aggravated rape of Christina Wylle, in violation of LSA-R.S. 14:42. On July 17, 1990, defendant motioned the court to allow him to proceed in proper person. Following a hearing, the defendant's motion was granted and his appointed counsel was ordered to be present during the trial to assist the defendant.
On August 29, 1990, a jury found the defendant guilty as charged, and he was subsequently sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.

SELF-REPRESENTATION
Defendant's first assignment is that the trial court erred in allowing him to represent himself after determining that he lacked sufficient knowledge and understanding. Specifically, defendant argues that the trial court failed to adduce enough information at the hearing to determine whether he knowingly and intelligently waived his right to counsel.
At the hearing of defendant's motion for self-representation, the following colloquy took place between the trial judge and the defendant:
Q: All right, sir. How much education have you had, Mr. Kennon?
*1350 A: I've got a high school graduation diploma and a few semesters of college.
Q: You are then able to read and write the English language?
A: Yes, sir.
Q: You understand the nature of the charge aggravated rape?
A: Yes, sir.
Q: Do you understand that by waiving your right to an attorney, that you'll be unrepresented by anyone who is trained and skilled in the law and I understand, Mr. Kennon, you believe you know about the law, but I'm going to tell you, sir, that I've read your pleadings and I think that you don't know as much as you think you know, do you understand that?
A: Well, I think that I know enough to get me by in this case, Your Honor.
Q: You understand that. You understand the perils and pitfalls. Do you understand that by waiving your right to an attorney that the State is going to be represented by the district attorney who has a degree in the law and who is trained and skilled in the prosecution of felony cases, do you understand that?
A: As long as he don't do nothing illegal that's within the means of the law, I understand that, I don't have no problems with representing myself.
Q: Well, how are you going to know Let me tell you, you don't raise your voice at me, Mr. Kennon.
At this point, the court admonished the defendant to "chill out" or he would be cited for contempt of court. Following Kennon's reply of "cite on," he was held in direct contempt of court and ordered to serve six months in jail consecutive with any other sentence. The trial judge continued as such:
THE COURT: Mr. Kennon, I don't believe, based on your attitude, the things that you have done in this case, that you are of sufficient knowledge and understanding to represent yourself, but based upon your request, I'm going to allow you to continue and represent yourself with the assistance of Mr. Smith with the Indigent Defender Board. Mr. Smith, the Court will require that you remain in the courtroom and assist Mr. Kennon with the defense of his case. However he desires to handle his own defense, he may be entitled to do so. All right.
MR. KENNON: Thanks.
THE COURT: I think you're making a serious mistake, Mr. Kennon, but that's your....
The sixth and fourteenth amendments of the federal constitution guarantee the right to assistance of counsel before someone can be convicted and imprisoned. The sixth amendment further grants to an accused the right of self-representation. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Carpenter, 390 So.2d 1296 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether defendant has waived his right to counsel. State v. Harper, 381 So.2d 468 (La.1980). The determination of whether defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); State v. Carpenter, supra. The record must reflect that the defendant is waiving his right "with eyes open" and with an awareness of the dangers and disadvantages of self-representation. State v. Harper, supra.
It is clear throughout this state's jurisprudence that the adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. The federal and state constitutions guarantee the right to self-representation, but make no qualifications or requirements concerning an accused's legal ability.
*1351 The record is replete with pre-trial motions filed by the defendant that reveal his knowledge of the seriousness of the crime charged and the possibility of life imprisonment. The record affirmatively shows that the defendant was literate, competent, and understood the charges against him. The trial judge warned the defendant on the record of the dangers and disadvantages of self-representation. Although the judge expressed his personal belief that Kennon was inexperienced and was making a mistake, he clearly found that the defendant knowingly and intelligently waived his right to counsel, which is all the constitution requires. As stated by this court in State v. Bradley, 535 So.2d 1108 (La.App. 2d Cir.1988), a defendant need not have the skill and knowledge of a lawyer to validly waive his right to counsel.
The trial judge correctly allowed Kennon to represent himself, even though he believed the defendant's decision to be a grave mistake. The judge ordered appointed counsel to assist defendant, and he did so throughout the trial. This assignment is without merit.

PROSECUTOR'S CLOSING REMARKS
Defendant next contends that the trial court erred in allowing the prosecutor to argue in his closing statement that defendant would have raped other individuals if he had had the opportunity. Specifically, defendant complains that the court should have ordered a mistrial when the prosecutor stated (1) "but for the grace of God and two dogs" Barbara Burgess "would have been here as a victim," and (2) Mrs. Burge[1] "would have been the victim" if she had been in her home rather than working in her yard when defendant "was out that morning, wandering around looking for somebody to rape."
Mrs. Burge testified that at about 9:00 a.m. on the day of the rape, defendant, riding a bicycle, approached her while she was doing yard work and asked if she needed help. She apparently said no and he left.
Mrs. Burgess testified that on the morning of the rape, defendant came to her house asking for work. After he lingered on her porch for two or three minutes, Mrs. Burgess testified she began to feel threatened. She claimed she shut the door in the defendant's face after telling him that her dogs were "about to come out of the door" on him.
During closing arguments, defense counsel objected to the statement about Mrs. Burgess and her dogs, but did not move for a mistrial.
LSA-C.Cr.P. Art. 774 limits the scope of argument to evidence admitted and conclusions of fact that the parties may draw therefrom. While prosecution must base conclusions and deductions in closing argument upon evidence adduced at trial, both State and defense are entitled to their own conclusions as to what is established by the evidence, and either may press upon the jury any view arising out of the evidence. State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied 508 So.2d 65 (La.1987). The trial judge has wide discretion in controlling the scope of argument. State v. Craddock, 435 So.2d 1110 (La.App. 1st Cir.1983).
The Louisiana Supreme Court has considered a similar issue in State v. Cage, 554 So.2d 39 (La.1989), certiorari granted, reversed on other grounds, ___ U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The defendant moved for a mistrial when the prosecutor, in closing arguments, referred to the defendant in the following manner: "Based upon his character and his propensities, easily we could have had three murder victims instead of one." The trial court denied both the objection and motion for mistrial and the supreme court affirmed. The court held the comment to be a proper argument based on the evidence admitted at trial. The state had introduced testimony of the two robbery victims who identified the defendant as their assailant in *1352 previous robbery convictions. The court noted that the circumstances and location of those robberies were similar to the instant case where the victim was murdered.
The trial judge in the case sub judice, found the prosecutor's statements to be fair inferences from the evidence presented. Although the prosecutor was not referring to a previous conviction, the acts were closely connected in time and place with the crime charged. Just as in Cage, the circumstances and location of the two prior instances were similar to the circumstances surrounding the rape. The evidence showed that Kennon had gone to the two other ladies' homes within a short time before the rape using the same modus operandi he used with the victim a few minutes later. The argument that they could have been raped and that the defendant was looking for someone to rape that morning was an inference that could be reasonably drawn from the facts presented at trial. Thus, the trial court did not err in overruling defendant's objection. For the above reasons, this assignment is without merit.

INSUFFICIENCY OF EVIDENCE
In his final assignment, defendant claims that the evidence presented at trial was insufficient to support the verdict. Defendant does not specify any particular lack of proof, nor does he specify an element of the offense not proven beyond a reasonable doubt.
In order to satisfy due process standards, the evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). LSA-C.Cr.P. Art. 821.
LSA-R.S. 14:42, as in effect at the time of the offense, provided in pertinent part:
Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
1. When the victim resists the act to the utmost, but whose resistance is overcome by force.
2. When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
3. When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
* * * * * *
The victim testified that on the morning in question she was in her bedroom when her four year old son told her that someone was at the door. Upon entering the kitchen in her nightgown, she saw the defendant standing partially inside the door. He asked if she needed any yard work done, to which she replied that her husband did the work around the house. The victim tried to shut the door, but the defendant forced his way into her home. She testified defendant picked up a knife from her counter and forced her into her bedroom where he threw her on the bed and threatened her to keep quiet. As she continued screaming, he pushed the knife harder against her throat and told her to "shut up or he would stick it in [her]." Following a struggle, the defendant pulled up her gown, forced her legs apart, and engaged in an act of forcible vaginal intercourse. He then looked through the bedroom demanding money and valuables. After receiving nine dollars from the victim, he left on his bicycle.
Deputy Shelley, the initial officer on the scene, testified that the victim's neck was red and scratched by the edge of a serrated steak knife. Deputy Kemp testified that he, too, saw the marks on victim's neck. She gave the officers a detailed description of the perpetrator, including a scar on his left eyebrow and another scar on his left temple. Police Chief Reeves recognized the description and immediately proceeded to the defendant's home. After defendant's mother refused a search of her home, defendant tried to evade the officers by leaving through a rear window. When defendant was subsequently apprehended outside the home, he was wearing clothing *1353 identical to that described by victim and he matched her detailed physical description. She readily identified him from a nonsuggestive lineup.
Judith Floyd, a forensic technician at Gene Screen, a DNA testing company, testified that she matched defendant's DNA with a sample from a vaginal swab taken from the victim. The analysis was shown to be 99.99% accurate.
Defendant attempted to prove during cross-examination of the victim that they had smoked marijuana and cocaine together and that the intercourse was consensual. The victim flatly denied that she had ever seen the defendant before February 17, 1990. Dempsy Alford, an expert toxicologist, testified that the analysis of defendant's urine revealed the presence of nicotine, but not of cocaine.
Based on the foregoing, any rational juror, viewing the evidence in the light most favorable to the prosecution, could accept the victim's testimony as credible and conclude beyond a reasonable doubt that defendant committed an act of vaginal intercourse with the victim, who was not his spouse, without her consent, and that her volition and resistance were overcome by force and by defendant's use of a knife which he wielded as a dangerous weapon. See State v. Davis, 550 So.2d 774 (La.App. 2d Cir.1989). This assignment is without merit.

CONCLUSION
The trial court did not err in allowing defendant to represent himself when he knowingly and intelligently waived his right to counsel and insisted on exercising his constitutional right to self-representation. The prosecutor's arguments were reasonable inferences from the facts presented at trial, and thus properly allowed. Finally, based on the facts presented, there was sufficient evidence to support the conviction. For the foregoing reasons, the defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] The state concedes in brief that the prosecutor mistakenly referred to Mrs. Burge as Mrs. Sanders.