660 So.2d 515 (1995)
STATE of Louisiana, Appellee
v.
Elbert WHITE, Jr., Appellant.
No. 27188-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
Rehearing Denied September 21, 1995.
*517 Indigent Defender Board, Edward F. Jones, Shreveport, for appellant.
Paul J. Carmouche, District Attorney, Michael A. Pitman, Asst. District Attorney, Trial Attorney, Shreveport and Tommy J. Johnson, Asst. District Attorney, Counsel on Appeal, Shreveport, for appellee.
Before MARVIN, SEXTON and STEWART, JJ.
STEWART, Judge.
Defendant, Elbert White, Jr., was charged by bill of information with one count of possession with intent to distribute a schedule II controlled dangerous substance (cocaine), a *518 violation of LSA-R.S. 40:967A(1). A unanimous jury convicted him as charged. The state subsequently charged defendant as a third felony offender pursuant to LSA-R.S. 15:529.1. After a hearing, the trial court adjudicated him a third felony offender and sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence. He appeals his conviction and sentence and assigns ten errors, three of which have not been argued. We affirm.

FACTS
On August 25, 1993, Officer D.E. McDaniels of the Shreveport Police Department was patrolling the Allendale area of Shreveport. Officer McDaniels, a fourteen-year veteran of the police force, had patrolled this area for over ten years and was very familiar with its reputation as a high crime area involving drug activity. He had also performed undercover drug transactions and was familiar with the procedure.
Officer McDaniels saw the defendant conduct what appeared to be a drug transaction with an individual at a vacant lot at the corner of Webster and Ford Streets. However, because of insufficient back-up, he did not arrest defendant and continued to patrol this area over the next several days. Officer McDaniels also returned to the area a day or two later and warned defendant that the police were suspicious of his actions and would continue to watch him.
On August 28, 1994, Officer McDaniels returned again to the vacant lot, this time accompanied by seven or eight other police officers in an "organized routine patrol strike" to conduct field interviews and an investigation. Once they arrived in the area, the police approached the vacant lot from both the front and back. Defendant and several other people were sitting on blankets at the vacant lot when the police arrived. Upon seeing the police, defendant immediately stood up, took several steps, and then began to run. The police gave chase on foot, but did not draw their weapons.
Defendant ran toward a wooded area near one side of the vacant lot. Several officers pursued defendant, who continued to run from the area. Another police officer radioed the location of the defendant to officers in other nearby patrol cars. One of the pursuing officers, David Pickett, saw defendant take money from his right pants pocket and exchange it to his left hand as he was running.
Officer Dianne Thomas, who received the radio message that defendant was running in her direction, stopped and backed up her car. At that time, defendant emerged from a nearby alley and ran into Officer Thomas' car, knocking defendant to the ground. At about the same time, Officer McDaniels saw defendant throw down a matchbox and some money from his left hand. Officer Pickett saw defendant discard only the money.
The defendant stood up and began to run again, but Officer Pickett apprehended him. Officer McDaniels picked up the matchbox and looked inside to discover what he suspected to be illegal drugs. Officer Pickett conducted a field test on the substance and confirmed it to be 4.4 grams of crack cocaine. Testimony at trial revealed that possession of this amount of cocaine at one time was inconsistent with personal usage and was instead consistent with usage for distribution purposes.

DISCUSSION

Assignment No. 1: Trial court erred by not granting defendant's motion to suppress evidence.
In this assignment of error, defendant contends that the trial court erred by failing to grant his motion to suppress the evidence. Specifically, he contends that the Shreveport police had no reasonable grounds or probable cause to stop, detain, or search him and that the warrantless search was a violation of his constitutional rights. Thus, defendant avers that the abandoned matchbox containing the cocaine should have been suppressed.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Fauria, 393 So.2d 688 (La.1981); State v. Taylor, 363 So.2d 699 (La.1978); LSA-C.Cr.P. Art. 215.1. The right to make *519 an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Washington, 621 So.2d 114 (La.App. 2d Cir.), writ denied, 626 So.2d 1177 (La.1993); State v. Patterson, 588 So.2d 392 (La.App. 4th Cir.1991); State v. Thibodeaux, 531 So.2d 284 (La.App. 3d Cir.1987). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have "articulable knowledge" of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Washington, supra; State v. Thibodeaux, supra; State v. Rodriguez, 396 So.2d 1312 (La.1981). Whether an officer has a reasonable suspicion to make an investigatory stop should be determined under a totality of the circumstances, in light of the officer's experience, training, and common sense. The officer's experience may be a consideration in ascertaining whether his inferences from the given facts were reasonable. State v. Jackson, 26,138 (La. App. 2d Cir. 08/17/94), 641 So.2d 1081; State v. Leary, 627 So.2d 777 (La.App. 2d Cir. 1993), writ denied, 93-3187 (La. 03/25/94), 635 So.2d 237.
Flight, a furtive gesture, nervousness, or startled behavior at the sight of a police officer is not, by itself, sufficient to justify an investigatory stop. However, this type of conduct may be a factor leading to a finding of reasonable cause. State v. Jackson, supra. Further, presence in a high crime area, coupled with nervousness or flight or suspicious actions upon approach of the officers is sufficient to justify an investigatory stop. State v. Taylor, 363 So.2d 699 (La.1978); State v. Jackson, supra. Such a high crime area is a place in which the character of the area gives color to conduct which might not otherwise raise the suspicion of an officer. State v. Buckley, 426 So.2d 103 (La.1983).
When police officers make an investigatory stop without legal justification, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. However, if the property is abandoned without any prior unlawful intrusion into a person's right to be free from government interference, then such property may be lawfully seized. State v. Belton, 441 So.2d 1195 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
When reviewing a ruling on a motion to suppress, based on findings of fact, great weight is afforded to the trial court's determination, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. Jackson, supra.
Applying the facts of the case at bar to these legal principles, we conclude that the trial court was correct in denying defendant's motion to suppress. Officer McDaniels was a fourteen-year veteran of the Shreveport Police Department and had worked in the Allendale area for over ten years. He had substantial experience in drug enforcement in this area and knew of its reputation as a high crime area. Officer McDaniels had observed defendant three days prior to the date of arrest conducting what appeared to be a drug transaction at the vacant lot. He had also warned defendant of his suspicions one or two days prior to the arrest. Because of Officer McDaniels' previous observations of possible drug trafficking, he returned to the vacant lot with additional police officers to conduct an "organized routine patrol-type strike" to further investigate. Upon seeing the police arrive at the vacant lot, defendant stood up, took a few steps, and then began to run. At that point, defendant's prior suspected conduct, his immediate flight, and his presence in a high crime area all provided the police reasonable suspicion to justify an investigatory stop. As a result, the matchbox containing the crack cocaine was abandoned without any prior unlawful intrusion into defendant's right to be free from government interference. Because this evidence was lawfully seized, this assignment is without merit.
Defendant argues that his case is factually similar to State v. Tucker, 626 So.2d 707 (La.1993). In the Tucker case, the court *520 noted its previous holding that a seizure violates LSA-Const. Art. 1 § 5 if the police, without reasonable suspicion, either actually stop an individual or create a situation wherein an actual stop is imminent. Clearly, the police in this case had reasonable suspicion to stop defendant when they observed defendant run when he saw the police arrive at the vacant lot.

Assignment No. 2:Trial court erred by not granting defendant's pro se motion to quash.
In this assignment, defendant objects to the trial court's denial of his pro se motion to quash the bill of information. In the motion to quash, defendant requested that the trial court quash the bill of information, arguing that he ran from the police because his friends sitting near him at the vacant lot possibly had guns or drugs. The trial judge permitted defendant to argue the motion, then denied it.
LSA-C.Cr.P. Arts. 532 and 534 set forth the general and special grounds for a motion to quash a bill of information. Neither of these articles includes grounds such as those referred to in defendant's motion to quash. Further, the crux of defendant's argument in brief, that the illegal drugs should have been suppressed, is addressed in the discussion of assignment one. Thus, this assignment is without merit.

Assignment No. 3: Trial court erred by overruling defendant's objection to the use of other crimes evidence.
This assignment concerns the state's use of other crimes evidence despite objections from defendant. Defendant contends that the state violated the rule for use of other crimes evidence as set forth in LSA-C.E. Art. 404B(1):
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In his brief, defendant notes several instances in which he objected to references to other crimes by the state's witnesses and argues that these references were prejudicial to his case. Each of these objections will be addressed individually.
Officer McDaniels briefly testified about other reports he had filed on defendant, but did not mention any specific criminal acts. Officer McDaniels was testifying as to how he was able to identify defendant to other police officers. Defendant objected to this testimony, and the trial court sustained the objection. Considering the context and brevity of this testimony and the fact that the objection was sustained by the trial court, we do not find that the defendant was prejudiced by this testimony.
Later in Officer McDaniels' testimony, he described the police's pursuit of the defendant and the defendant's "throw-down" of the matchbox containing the drugs. The state asked Officer McDaniels if he had ever observed other individuals discard articles as they were running from the police. Defendant objected, asserting that the testimony was irrelevant, but the trial court overruled the objection.
This testimony was based on Officer McDaniels' fourteen years of experience in police work, specifically drug enforcement. During this portion of the testimony, he did not mention other crimes that defendant had committed. He merely testified to the importance of watching an individual's hands as he runs from the police. This testimony was offered to explain that individuals often discard articles prior to being apprehended by law enforcement officials. Thus, we conclude that the officer's testimony was not a prejudicial reference to other crimes of defendant, but relevant testimony to explain Officer *521 McDaniels' actions during his pursuit of defendant.
Defendant also made general objections to the state's use of other crimes evidence before and during testimony from Officers McDaniels and Pickett as to defendant's actions several days prior to his arrest for possession with intent to distribute cocaine. Officer McDaniels testified to having seen defendant conduct what appeared to be a drug transaction three days prior to the date of the arrest. Officer McDaniels stated that on August 25, 1993, he saw defendant hand a package to an unidentified person, who in turn exchanged the package for money with someone waiting in a car. He thought that this was a drug transaction, but did not indicate that he actually saw any illegal drugs. Officer Pickett gave similar testimony.
This testimony does not appear to be that of other crimes evidence of other crimes. It was simply offered to explain why Officer McDaniels initially returned to warn defendant of his suspicions and then returned to the scene with additional officers to conduct the field investigation, which resulted in the arrest. This assignment is also without merit.

Assignment No. 7: Trial court erred by overruling defendant's objection to the state's references to matters outside of the evidence in closing argument.
In this assignment of error, defendant contends that the trial court erred in overruling his objection to remarks by the state during closing argument:
We also heard from Detective Childers who was accepted by this Court as an expert in the valuation of crack cocaine. Do you remember him? He was the large fellow who testified that he has bought cocaine on many, many, many occasions. He testified to the same thing, that the crack cocaine in that package ranges anywhere from $440 on up to $880 or even approaching a thousand. Sells anywhere from $10 for a tenth of a gram up to twenty or twenty-five dollars even sometimes. So you have basically five hundred dollars worth of crack cocaine in there. What does Elbert White do for a living? He used to work construction but he doesn't do that any more. He sits out there on the blanket and sells his crack cocaine is what he does, that's where he gets his money ladies and gentlemen. Who can afford to walk around with five hundred bucks' worth of crack cocaine when he doesn't even work? (R-346.)
At that point, defendant objected, arguing that there was no evidence of what he did for a living or how he obtained his money. Defendant, however, did not move for a mistrial. The trial court overruled the objection after the state responded that defendant had testified to being unemployed at the time of his arrest.
LSA-C.Cr.P. Art. 774 limits the scope of argument to evidence admitted and conclusions of fact that the state or defendant may draw therefrom. The state must base conclusions and deductions in closing argument upon the evidence adduced at trial. However, the state and the defendant are permitted to draw their own conclusions as to what the evidence establishes, and both may press upon the jury any view arising out of the evidence. State v. Kennon, 588 So.2d 1348 (La.App.2d Cir.1991), writ denied, 600 So.2d 634 (La.1992); State v. Mills, 505 So.2d 933 (La.App.2d Cir.), writ denied, 508 So.2d 65 (La.1987). Further, the trial court judge has wide discretion in controlling the scope of closing argument. State v. Kennon, supra.
The contested statement was proper, as it was a conclusion drawn from testimony at trial. First, Detective Childers testified to the street value of the crack cocaine that defendant discarded prior to his arrest. Second, during defendant's direct testimony, defendant stated that he was on probation at the time of the instant offense. His probation obligations required him to do public service work in the mornings and then to attend Alcoholics Anonymous meetings in the afternoons. Defendant testified that after the meetings, he spent his afternoons at his mother's house near the vacant lot where his arrest occurred playing dominoes. Defendant further testified on cross-examination that he was not working at the time of the instant offense. This evidence was sufficient *522 for the state to conclude that defendant sold crack cocaine for a living and to present this conclusion to the jury in closing argument. The trial court did not err in overruling defendant's objection. This assignment is without merit.

Assignment No. 8: Trial court erred by adjudicating defendant as a third felony offender and sentencing him to a life sentence.

Assignment No. 9: Trial court erred in not granting defendant's motion to reconsider sentence.

Assignment No. 10: Trial court erred in imposing an unconstitutional sentence of life imprisonment; habitual offender statute is unconstitutional.
Following defendant's conviction, the state filed a bill of information charging him as a third felony offender pursuant to the habitual offender law, LSA-R.S. 15:529.1. The trial judge conducted a multiple offender hearing and found defendant to be a third felony offender. The trial judge then referred to subsection A(1)(b)(ii) of the habitual offender law in sentencing defendant to life imprisonment, without benefit of parole, probation, or suspension of sentence. This subsection provides for such a penalty if the third felony and each of the two prior felonies are a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years.
Defendant briefs these three assignments of error together. Defendant contends that the trial court erred in adjudicating him a third felony offender and imposing a life sentence because the date of his conviction for his first felony offense overlaps the date that he committed his second felony offense.
Although defendant filed a timely motion to reconsider sentence, he did not raise the issue of the trial court's error in adjudicating him a third felony offender. However, this issue was raised as an assignment of error. Further, because of the seriousness of the error, we address this argument via an error patent review.[1]
Defendant's first prior felony conviction was for two counts of distribution of a schedule II controlled dangerous substance (cocaine). These offenses were committed on October 10 and 12, 1990. Defendant pled guilty as charged on September 19, 1991.
Defendant's second prior felony conviction resulted from a charge of possession of a schedule II controlled dangerous substance (cocaine) with intent to distribute. This offense occurred on July 12, 1991. A jury convicted defendant of attempted possession of cocaine with intent to distribute on April 8, 1992.
In this assignment, defendant asserts that under Mims v. Butler, 601 So.2d 649 (La. 1992) (on rehearing), there is a sequential requirement, which dictates that in order to be adjudicated a third felony offender, the defendant must have been convicted of the first felony conviction before committing a subsequent second felony offense. Based on this interpretation of Mims, defendant argues that he should only have been adjudicated a second felony offender.
In Mims v. Butler, supra, the defendant, Joe Mims, was convicted of two felonies on November 22, 1978. Subsequently, on January 12, 1985, Mims committed two additional felonies. The state filed a multiple offender bill against Mims, using the 1978 convictions as predicate offenses. The defendant was convicted of the 1985 charges and sentenced as a third felony offender to thirty-five years. The conviction and sentence were later reversed on rehearing by the Louisiana Supreme Court. The Court opined that because the defendant was convicted of two separate offenses on the same day, those offenses were to be treated as one offense for multiple offender purposes. Thus, the Court *523 held that Mims should have been adjudicated a second felony offender rather than a third felony offender.
Clearly, Mims is distinguishable from the facts of the instant case. Here, White was convicted on September 19, 1991, of two separate CDS offenses that occurred on October 10 and 12, 1990. Under Mims, these are clearly one felony. Defendant's next conviction was on April 8, 1992, for an offense occurring on July 12, 1991. Of course, to be considered a second felony offender, a defendant must have been previously convicted of an offense. Thus, the second offense (of July 12, 1991 with conviction of April 8, 1992) could not be said to be a second felony offense for enhancement purposes because the defendant had not yet been convicted of the first offense. However, neither LSA-R.S. 15:529.1 nor the case law requires that a defendant's conviction for the first offense be complete before that conviction and a subsequent second conviction can be used to find the defendant a third felony offender. The only requirement is that both the two previous convictions be separately obtained and final, as they were in the instant case. We believe the argument made by the defendant on this issue stretches the holding of Mims. Consequently, this court declines to adopt such an interpretation. This assignment lacks merit.
Next, the defendant filed a motion to reconsider sentence urging that the sentence imposed by the trial court was excessive and exceeds the recommended sentencing guidelines. In a written opinion, the trial court denied the motion to reconsider.
LSA-R.S. 15:529.1A(2)(b)(ii) provides:
If the third felony and each of the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
(Emphasis added.)
Additionally, La.S.G. § 309B states that:
Any person who has been convicted of a felony and adjudged an habitual offender shall receive an enhanced penalty as provided by R.S. 15:529.1, the Habitual Offender Law.
(Emphasis added.)
Here, the defendant was adjudicated a third felony offender pursuant to the statute and faced a mandatory life sentence because the two prior felonies and the instant offense were punishable by terms of imprisonment in excess of twelve years. Once the defendant achieved the status of third felony offender, the guidelines became inapplicable. The trial court lacked discretion in determining a sentence and was mandated by law to impose a life sentence. In light of his offender status, the defendant's claim that his sentence was excessive is without merit.

Assignment No. 4: Trial court erred by overruling defendant's objection to testimony from a state witness.

Assignment No. 5: Trial court erred by overruling defendant's objection to hearsay testimony.

Assignment No. 6: Trial court erred by overruling defendant's objection to questions from the state regarding how defendant financially supported his family.
Defense counsel states in his brief that he found no jurisprudential support for these three assignments of error. We agree and consider assignments four, five, and six abandoned.
Error Patent Review
An error patent review disclosed that the trial court informed defendant that he had "three years to pursue any post-conviction relief remedies to which you are accorded by law." (R-427-28). The three-year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Art. 914 or 922; thus, prescription has not yet begun to run. State v. Gladney, 626 So.2d 778 (La.App.2d Cir.1993); State v. Mock, 602 So.2d 776 (La.App.2d Cir.1992). The trial court is directed to provide proper notice *524 of the prescriptive period to defendant and to ensure that his receipt thereof is made a matter of record.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, WILLIAMS and STEWART, JJ.
Rehearing denied.
NOTES
[1] In State v. Baker, 452 So.2d 737 (La.App. 1st Cir.1984), the defendant raised an error as to his sentence under the habitual offender law for the first time in his brief. He contended his sentence was improper on the record submitted because the state had not shown that the cleansing period under LSA-R.S. 15:529.1C could be avoided. The first circuit stated that this allegation, if proven, would constitute error patent on the face of the record under LSA-C.Cr.P. Art. 920, and thus, the court reviewed the assignment.