736 So.2d 967 (1999)
STATE of Louisiana, Appellee,
v.
Bryan O'Neal JACKSON, Appellant.
No. 31,836-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*969 Amy C. Ellender, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, A. Scott Killen, Assistant District Attorney, Counsel for Appellee.
Before BROWN, GASKINS and KOSTELKA, JJ.
GASKINS, J.
The defendant, Bryan O'Neal Jackson, pled guilty as charged to possession of cocaine, a violation of La. R.S. 40:967; however, he reserved his right to a Crosby appeal of the trial court's denial of his motion to suppress. The defendant received a three-year suspended sentence, with three years of supervised probation and a $1,000.00 fine, with imposition of six months in the parish jail in default of payment of the fine. Finding that the trial court properly denied the motion to suppress, we affirm the defendant's conviction and sentence.

FACTS
On October 31, 1996, Officers Curtis Hawkins and Carl Washington were on bicycle patrol when they saw the defendant sitting on a concrete parking barrier in the parking lot of John's Number 1 Beer Store. The store is located in an area of Ruston known for drug trafficking and violence. On many prior occasions, police officersincluding Officer Hawkinshad removed weapons from people selling drugs in John's parking lot. The owner of John's had requested that the police remove people loitering on the premises and had several large "No Loitering" signs placed at both ends of the building. The defendant had been ordered by police to leave the premises on several prior occasions at the request of the owner.
Officer Hawkins approached the defendant and performed a pat-down search for weapons while Officer Washington observed. Officer Washington testified that the defendant appeared to be nervous throughout the encounter. Officer Washington stated that after Officer Hawkins commenced a pat-down search, the defendant tried to remove his hands from the wall and put them into his right front pants pocket. Officer Washington testified that during the course of the pat-down search, the defendant made a statement, containing the word "dope," to a bystander who asked what "the police had him for." He testified that he then observed Officer Hawkins reach into the defendant's right front pants pocket and withdraw from it a brown paper towel containing what appeared to be crack cocaine.
Officer Hawkins testified that as he and Officer Washington approached, the defendant was acting nervous, looking from side to side, and he thought that the defendant was going to run away. Therefore, based on his knowledge of the "high crime" neighborhood, of the drug sales that took place in this parking lot, the fact that he removed weapons from people in this area all the time, and his numerous previous requests to the defendant to leave the premises, Officer Hawkins asked the defendant to put his hands on the wall and commenced a pat-down search of the defendant. Officer Hawkins testified that the defendant continuously made attempts to move his hand to his waistline or front pocket area after the pat-down search had commenced, leading Officer Hawkins to believe that the defendant was reaching for a weapon. Finally, Officer Hawkins testified that in response to a question from a bystander, during the pat-down search, the defendant made a statement to the effect of: "He got me with a pocket full of dope."
Officer Hawkins felt a lump in the defendant's right front pants pocket during the pat-down search and Officer Washington was able to see it as well. After the defendant stated that the officers had "got him with a pocket of dope," Officer Hawkins *970 reached into the defendant's right front pants pocket and retrieved the contraband which consisted of several rocks of crack cocaine wrapped in a brown paper towel.
The defendant was charged by bill of information with possession of cocaine, a violation of La. R.S. 40:967. Following a hearing on an unsuccessful motion to suppress the evidence seized from the search, the defendant pled guilty, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal the denial of his motion to suppress. The defendant received a three-year suspended sentence and was ordered to pay a $1,000.00 fine and serve six months in jail if he defaulted on this payment.

MOTION TO SUPPRESS
The defendant contends that the trial court erred in denying his motion to suppress certain incriminating evidence seized from his person by the police.
Great weight is afforded to the trial court's determination of a motion to suppress, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. Goodjoint, 30,727 (La.App.2d Cir.6/24/98), 716 So.2d 139; State v. White, 27,188 (La.App.2d Cir.8/23/95), 660 So.2d 515; State v. Jackson, 26,138 (La.App.2d Cir.8/17/94), 641 So.2d 1081.
The question to be initially analyzed is the lawfulness of the officer's original investigatory stop. The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Fauria, 393 So.2d 688 (La.1981); State v. White, supra; La.C.Cr.P. art. 215.1. The right to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. White, supra; State v. Washington, 621 So.2d 114 (La.App. 2d Cir.1993), writ denied, 626 So.2d 1177 (La.1993); State v. Patterson, 588 So.2d 392 (La.App. 4th Cir.1991); State v. Thibodeaux, 531 So.2d 284 (La. App. 3rd Cir.1987). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have "articulable knowledge" of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Rodriguez, 396 So.2d 1312 (La. 1981); State v. Washington, supra; State v. Thibodeaux, supra. Whether an officer has a reasonable suspicion to make an investigatory stop should be determined under the totality of the circumstances, in light of the officer's experience, training and common sense. The officer's experience may be a consideration in ascertaining whether his inferences from the given facts were reasonable. State v. Jackson, supra; State v. Leary, 627 So.2d 777 (La. App. 2d Cir.1993), writ denied, 93-3187 (La.3/25/94), 635 So.2d 237.
Flight, a furtive gesture, nervousness, or startled behavior at the sight of a police officer is not, by itself, sufficient to justify an investigatory stop. However, this type of conduct may be a factor leading to a finding of reasonable cause. State v. White, supra; State v. Jackson, supra. Further, presence in a high crime area, coupled with nervousness or flight or suspicious actions upon approach of the officers is enough to justify an investigatory stop. State v. Taylor, 363 So.2d 699 (La. 1978); State v. White, supra. Such a high crime area is a place in which the character of the area gives color to conduct which might not otherwise raise the suspicion of an officer. State v. Buckley, 426 So.2d 103 (La.1983).
In this case, the officers testified that the defendant was sitting on a parking barrier outside of the very same business *971 establishment where he had previously been warned by police officers, including Officer Hawkins, of the store policy against loitering. Three "No Loitering" signs are posted on the building; two of the signs are three feet in height and are placed on the sides of the building and one sign is in the front window. Both officers testified that the defendant was nervous and fidgety and continuously looked from side to side as they approached him, leading them to believe that he was going to flee the scene. The store was located in a high crime area known for drug trafficking. The police officers working in this area frequently conducted pat-down searches of individuals because of the high incidence of weapons and shootings in the vicinity. Additionally, these particular officers were hindered from fleeing the area quickly, if necessary, due to their mode of transportation, bicycles. Under these circumstances, the officers were justified in detaining the defendant for suspicion of criminal activity and conducting a pat-down search for their safety.
Additionally, while: Officer Hawkins was conducting the pat-down search, the defendant continually removed his hand from the wall in an attempt to reach into his right front pants pocket or around his waistline area. Officer Hawkins felt and Officer Washington saw a bulge in the defendant's right front pocket. While the officers never testified that they were able to identify, by plain feel, the object in the defendant's pocket, the defendant made a voluntary statement to a third party, uninvolved with the arrest, that the officers got him with a pocket full of dope. After the defendant made this statement, Officer Hawkins reached into the defendant's pocket and removed the crack cocaine. Thus, the search and seizure were lawful.
This assignment of error is without merit.

DEFAULT TIME
The defendant also asserts that the trial court erred in ordering him to serve jail time in the event of his failure to pay a court-ordered fine.
An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991); State v. Wilkerson, 29,979 (La.App.2d Cir.10/29/97), 702 So.2d 64. This defendant has not suffered any penal consequences at this time from failure to pay his fine. If the defendant fails to timely pay his fine, the trial judge should determine the defendant's ability to pay prior to imposing jail time as a consequence of this failure.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.