627 So.2d 777 (1993)
STATE of Louisiana, Appellee,
v.
Antonio Gabriel LEARY, Appellant.
No. 25,553-KA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
*778 David R. McClatchey, Asst. Indigent Defender, Shreveport, for appellant.
Paul Carmouche, Dist. Atty., Hugo A. Holland, Jr., Asst. Dist. Atty., Shreveport, for appellee.
Before MARVIN, VICTORY and BROWN, JJ.
BROWN, Judge.
Defendant, Antonio Gabriel Leary, pled guilty to possession of a firearm by a convicted felon. Leary, however, reserved his right to appeal the trial court's denial of a pre-trial motion to suppress evidence. Leary contends that a Walther .380 pistol was unconstitutionally seized from his person. After considering the search and seizure issue, we affirm.

FACTS AND PROCEDURAL HISTORY
On February 2, 1993, Shreveport Police Officers Washam, Jermain, and Lilley were assigned to patrol the Allendale area on the graveyard shift (9:50 P.M. to 5:50 A.M.). To get a feel for the street, they routinely started their shift by checking "hot corners" where drug trafficking, drinking and shootings regularly occurred. The corner of Madison and Laurel Streets was such a high crime location. Madison Street Grocery is at this corner and sells package liquor.
The officers testified that their purpose for being at these "hot corners" was to check for public drinking, narcotics sales and to disperse persons where the local businesses have posted "no loitering" signs. These officers knew from experience that "when a lot of people gather in one corner ... it just aggravates the situation ... some may be high, some may be drunk ... somebody may say something ... and you may have a problem start up."
At 10:55 P.M. they converged on the corner of Madison and Laurel. Despite the posting of "no loitering" signs by the Madison Street Grocery, defendant and three other men were standing on the corner or leaning against the building. One man, later identified as defendant, had a brown paper bag in his hand and as they approached, the *779 officers could see that it contained a bottle with the cap off. Shreveport City Code Ordinance § 3-10 prohibits consumption of alcohol on any public street, sidewalk or on property zoned for package liquor sales.
Based on their observations, the three officers ordered the four men to place their hands against the store building to be frisked for weapons. As the officers proceeded to pat-down the four individuals, Leary became nervous and tried to break away. When Officer Lilley grabbed Leary and put his hands back against the wall, he felt a hard object under Leary's coat and recovered the Walther .380 pistol. At that point, Leary was arrested for carrying a concealed weapon and a search incident to the arrest revealed two marijuana cigarettes and suspected drug paraphernalia. The Walther .380 pistol turned out to be stolen. Leary, who had a previous conviction for possession of cocaine, was charged with possession of a firearm by a convicted felon. Charges concerning the marijuana were not filed due to Leary's plea of guilty to the firearm charge.
Each officer testified to a high number of calls and arrests for drinking, drugs and shootings at this particular corner. In addition, a hostile crowd had attacked police with bottles and other debris at this location that past summer. Each of the officers had personally participated in incidents at this corner involving drugs, alcohol and guns. They further stated that when outnumbered, such as in the instant case, they habitually pat down those present for weapons to ensure their safety.
In pleading guilty, Leary admitted his prior conviction and that if the firearm was legally seized that he was guilty as charged. By agreement Leary received the statutory minimum term of three years at hard labor without benefit of probation, parole or suspension. It was the seizure of the pistol that Leary claims was unconstitutional. Thus, he reserved his right to appeal the denial of his motion to suppress.

DISCUSSION
The officers have never contended that Leary was under arrest at the time the weapon was recovered. They claim that they had a reasonable suspicion of criminal conduct. Thus, we are faced with a clean question of whether the police conduct was reasonable and therefore constitutional under the "stop and frisk" doctrine of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and LSA-C.Cr.P. Art. 215.1.
In Terry, the Supreme Court recognized that an investigatory "stop" was a seizure of the person and that a "frisk" was a search within the contemplation of the Fourth Amendment. Because such intrusions were more limited in scope than an arrest or full-blown search, they would not be unreasonable under the Fourth Amendment if predicated on articulable inferences even though those inferences were less than the probable cause needed for an arrest. The court struck a delicate balance between the need for swift action to investigate and prevent crime and the right of citizens to be free from unreasonable police intrusion.
In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court stated:
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time.
Under Terry, a police officer may forcibly stop an individual for investigatory purposes if he has a reasonable suspicion based on objective facts that the particular individual is or is about to be engaged in criminal activity. U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); LSA-C.Cr.P. Art. 215.1.
The quantitative measure for a forcible stop and brief detention is variously labeled "reasonable suspicion" or "reasonable cause." It can not be an "inchoate or unparticularized *780 hunch," but must be based on specific facts articulated by the officer which justifies the intrusion. Furthermore, the police officer must articulate specific facts to justify separately and independently both the "stop" and "frisk." See U.S. v. Cortez, supra; Terry v. Ohio, supra.
Whether an officer has a reasonable suspicion to make an investigatory stop should be judged under the "totality of the circumstancesthe whole picture," in light of the officer's experience, training and common sense. U.S. v. Cortez, supra; State v. Fikes, 616 So.2d 789 (La.App.2d Cir.1993). The officer's experience may be considered in determining whether his inferences from the facts at hand were reasonable. State v. Fikes, 616 So.2d at 791; State v. Arrington, 556 So.2d 263 (La.App.2d Cir.1990).
Under these rules we examine the totality of the circumstances to determine the legitimacy of the police action in this case.

THE STOP
The Shreveport Police routinely check "hot corners" for unlawful conduct and developments which could lead to violence. As part of this routine patrol, the police attempt to identify anyone violating the city ordinance prohibiting public drinking. Strict policing of the public drinking ordinance helps prevent disorderly conduct and violent confrontations associated with alcohol consumption. Curbing this type behavior undoubtedly aids in the prevention of drug trafficking, shootings and other violent crimes.
Leary was holding an open container inside a brown paper bag while standing outside of a store which sold package liquor. A brown paper bag is a common method of concealing alcoholic beverages. Considering the known history of this location together with the bottle in a paper bag outside a package liquor store, the police officers had reasonable cause to believe Leary was violating the city ordinance prohibiting public consumption of alcohol on property zoned for package liquor sales and properly detained Leary for questioning in accordance with Terry v. Ohio, supra, and LSA-C.Cr.P. Art. 215.1.
The totality of the circumstances demonstrated that: 1) defendant was congregated with others on a corner known for criminal activity involving drugs, alcohol and guns; 2) the police officers routinely checked this corner each night and had personally responded to numerous prior shootings and drug calls at this location; 3) defendant appeared to be violating the public drinking ordinance; and 4) the officers knew from experience that people at this location were often armed. These circumstances justified the limited stop or seizure of defendant.

THE FRISK
The corner of Madison and Laurel Streets is located in a high-crime area. This area has demonstrated a hostile attitude toward police officers, including a specific incident in which rocks and bottles were thrown at police. Previous arrests had produced weapons and numerous shooting calls emanated from this location. The presence of a weapon was something the officers could rightfully anticipate and fear. For their own safety, as well as the safety of the general public, the police officers chose to frisk the suspects for weapons prior to questioning. Under these circumstances, it cannot be said the common practice of the police to frisk suspects for the officers' protection (as well as the safety of the general public) prior to questioning the suspects regarding criminal activity is unreasonable or unwarranted, especially in a situation where the police officers are outnumbered. See State v. Rodriguez, 476 So.2d 994 (La.App. 1st Cir.1985), (affirming an officer's frisk of a suspect prior to questioning where the officer was alone with suspect late at night in a secluded place, and the officer reasonably believed both may have been in danger).

LSA-C.Cr.P. Art. 930.8
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not inform Leary. This defect has no bearing on the sentence and is *781 not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. Arts. 921, 930.8(C); State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992). The district court is directed to give the appellant written notice of the prescriptive period for applying for PCR within 10 days of the rendition of this opinion and file proof of appellant's receipt of such notice in the record of the proceedings. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992).

CONCLUSION
The facts and circumstances in this record are sufficient for us to conclude that the officers' conduct was reasonable and that the stop and frisk for weapons was valid and not a violation of the appellant's constitutional right against unreasonable search and seizure.
The trial court's denial of defendant's pre-trial motion to suppress was correct. Defendant's conviction is AFFIRMED.