756 So.2d 343 (1999)
STATE of Louisiana, Appellee,
v.
Lenard Stanley MYERS, Appellant.
No. 32,777-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 1999.
Opinion Granting Rehearing March 1, 2000.
*346 Louisiana Appellate Project by Amy C. Ellender, Mer Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Donna Frazier Hall, Assistant District Attorneys, Counsel for Appellee.
Before CARAWAY, PEATROSS, KOSTELKA, JJ.
KOSTELKA, J.
A unanimous jury found Lenard Stanley Myers ("Myers") guilty as charged of possession of cocaine, a Schedule II controlled dangerous substance, La. R.S. 40:967(C). The court sentenced Myers to four years at hard labor with credit for time served but suspended the balance of the sentence and placed Myers on three years active supervised probation with special conditions. Additionally, the trial court ordered that the defendant pay court costs or serve twenty-five days in the parish jail. We affirm the conviction and sentence.

FACTS
While conducting a series of drug-buy stops near a known "crack house" in the 3100 block of Harp Street in Shreveport, Louisiana, Shreveport Police Officer Mike McConnell ("McConnell") stopped Myers for questioning after he saw him exit the house on June 9, 1996, at approximately 4:15 p.m. In order to calm Myers' nervousness, McConnell explained that Myers had been stopped because he fit the description of a suspect for whom police were looking. McConnell also conducted a pat-down search of the suspect. Although then finding no weapons, McConnell later "could see [a matchbox] through the [left] breast pocket" of Myers' white shirt. McConnell asked the defendant if he smoked; Myers responded that he did not. McConnell then inquired about the purpose for the matchbox. Myers asked "What matchbox?" and then reached for the matchbox in his pocket. Being aware that drug suspects carry razor blades and/or crack cocaine in matchboxes, McConnell stopped Myers and removed the matchbox himself. McConnell then shook the box and reported hearing a "strange rattle" inside. Myers volunteered that he had found the matchbox and did not know what was in it. Thereafter, McConnell opened the box and discovered .5 grams of what a field test and a later crime lab analysis identified as crack cocaine. McConnell arrested Myers.
Myers filed a motion to suppress all physical evidence recovered by McConnell claiming that both the stop and subsequent search were illegal. After a hearing, the trial court denied the motion. Upon conviction, Myers appealed.

DISCUSSION

Sufficiency of the Evidence
In assignment of error number two, Myers complains that the evidence was insufficient to convict him of possession of cocaine. It is appropriate that we first address the sufficiency of the evidence complaint. State v. Hearold, 603 So.2d 731 (La.1992). The criterion for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crime beyond *347 a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Clower, 30,745 (La.App.2d Cir.06/24/98), 715 So.2d 101. That standard, initially enunciated in Jackson and now legislatively embodied within La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); Clower, supra.
The crime of possession of cocaine is the knowing and intentional possession of cocaine without a valid prescription or order from a practitioner while acting in the course of his profession. La. R.S. 40:967(C). In this case, McConnell discovered cocaine in a matchbox seized from the pocket of Myers' shirt. The jury obviously rejected Myers' claim that he found the box and his denial of knowledge of the contents. Considering Myers' exit from a known drug location, we find this conclusion to have been a reasonable one. When viewed in the light most favorable to the state, this evidence is sufficient to convict Myers of the crime of possession of cocaine.

Terry Stop/Search and Seizure
Myers contends in assignment of error number one that the trial judge erroneously refused to suppress the evidence seized from the matchbox because the officer had neither a reasonable suspicion of criminal activity to justify the stop nor an articulable belief that he was in danger to justify the subsequent search and seizure of evidence.
Great weight is afforded to the trial court's determination of a motion to suppress, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. Jackson, 31-836 (La.App.2d Cir.03/31/99), 736 So.2d 967. In ruling on a motion to suppress, the reviewing court may consider evidence presented at trial in addition to evidence presented at the motion to suppress. State v. Fisher, 97-1133 (La.09/09/98), 720 So.2d 1179.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The right to make an investigatory stop must be based upon reasonable suspicion to believe that the suspect has been, is, or is about to be engaged in criminal activity. Jackson, supra. Reasonable suspicion for an investigatory stop is something less than probable cause, but the officer must have "articulable knowledge" of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. Id. Whether an officer has a reasonable suspicion to make an investigatory stop should be determined under the totality of the circumstances, in light of the officer's experience, training, and common sense. The officer's experience may be a consideration in ascertaining whether his inferences from the given facts were reasonable. Id. Indeed, to assess the validity of an investigatory stop, the critical inquiry focuses on the officer's knowledge at the time of the stop. State v. Branch, 30,733 (La.App.2d Cir.07/06/98), 714 So.2d 1277, writ denied, 98-2359 (La.01/08/99), 734 So.2d 1227.
Flight, a furtive gesture, nervousness, or startled behavior at the sight of a police officer is not, by itself, sufficient to justify an investigatory stop. However, this type of conduct may be a factor leading to a finding of reasonable suspicion. Id. Reputation of an area is an articulable fact upon which an officer can rely and which is relevant to a determination of reasonable suspicion to support an investigatory stop. State v. Willis, 31,561 (La. App.2d Cir.01/20/99), 728 So.2d 493. Further, presence in a high crime area, coupled with nervousness or flight or suspicious actions upon approach of the officers, is enough to justify an investigatory stop. State v. Taylor, 363 So.2d 699 (La.1978); Jackson, supra. Such a high crime area is *348 a place in which the character of the area gives color to conduct which might not otherwise raise the suspicion of an officer. State v. Buckley, 426 So.2d 103 (La.1983).
In this case, McConnell testified that on June 9, 1996, he observed Myers exit a known drug location with a package; McConnell had previously made numerous drug arrests at the location. On that day, other arrests had also been effectuated through the drug-buy operation. McConnell stopped Myers after following him in his police car approximately one block north of the drug location. Myers appeared to be unaware that he was being followed. When McConnell made contact with him, however, Myers became very nervous and fidgety. Based upon McConnell's past experience, training, and common sense, and Myers' nervous demeanor and departure from a known drug house where arrests had earlier been made, we find that a reasonable suspicion that Myers had or was engaging in criminal activity existed. Accordingly, McConnell's investigatory stop of Myers was legal. We next address the legality of the search and seizure of the matchbox.
The seizure of contraband other than weapons during a lawful Terry stop was justified under the "plain-view" doctrine in Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). That doctrine permits the seizure of an object without a warrant if police are lawfully in a position to view it, if its incriminating character is immediately apparent, and if police have a lawful right of access to it. Willis, supra. Simply stated, the rule is that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).
In this case, Myers testified that he had previously conducted a pat-down search for weapons when he saw "[a matchbox] through the [left] breast pocket" of Myers' white shirt. Accordingly, the matchbox was in plain view. Because McConnell was lawfully in a position to view the evidence (during the lawful Terry stop), and there exists no issue regarding his lawful access to it, the crucial inquiry under these facts is whether the incriminating nature of the item was immediately apparent to McConnell so as to justify the seizure and search of the matchbox. More succinctly stated, the issue under these facts is "whether an officer, relying on years of practical experience and knowledge commonly accepted, has probable cause to seize the [matchbox] in plain view." Texas v. Brown, supra, at 735, 103 S.Ct. 1535.
Pursuant to the United State Supreme Court's analysis and resolution of similar facts and issues in Texas v. Brown, supra, we find that McConnell legally seized and searched the matchbox pursuant to the "plain view" exception to the Warrant Clause of the Fourth Amendment.
Texas v. Brown involved the seizure of a heroin-filled opaque green balloon by a police officer who had conducted a vehicle stop. At issue was the "immediately apparent" requirement of the "plain view" doctrine because the officer could not readily see the illegal drug inside of the balloon. In upholding the search and seizure, the Supreme Court explained that the "phrase `immediately apparent' was... an unhappy choice of words ..." due to the implication "that an unduly high degree of certainty as to the incriminatory character of the evidence [was] necessary for an application of the `plain view' doctrine." Texas v. Brown, supra, at 741, 103 S.Ct. 1535.
In discussing Colorado v. Bannister, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980), which also involved the "plain view" doctrine, the Court stated:
Plainly, the Court did not view the "immediately apparent" language ... as establishing any requirement that the officer "know" that certain items are contraband or evidence of a crime. Indeed, Colorado v. Bannister, supra, was *349 merely an application of the rule, set forth in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), that "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."
Id. at 741-742, 103 S.Ct. 1535.
Continuing, the Court stated:
[P]robable cause is a flexible, commonsense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Moreover, our observation in United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is equally applicable to the probable-cause requirement:
"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the sameand so are law enforcement officers. Finally the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."
Id. at 742, 103 S.Ct. 1535.
In upholding the search, the court, in Texas v. Brown, supra, attached importance to the officer's awareness, both from his participation in previous drug arrests and discussions with other officers, that balloons tied like the one he saw were frequently used to carry illegal drugs. Indeed, the court stated, "[t]he fact that [the officer] could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents particularly to the trained eye of an officer." Id. at 743, 103 S.Ct. 1535.[1]
In this case, McConnell was clearly aware that Myers had just left a known drug house where numerous arrests had been made. Moreover, from experience and common sense, the officer knew that drug offenders carry razor blades and cocaine in matchboxes. Suspiciously, after questioning by McConnell, Myers admitted that he did not smoke and quickly offered exculpatory explanations for his possession of the box. In State v. Stevens, 95-501 (La.App. 5th Cir.03/26/96), 672 So.2d 986,[2] the court upheld the seizure of a matchbox which contained cocaine based upon the "plain-feel" doctrine and noted:
Police officers neither live nor work in a vacuum. They immediately know, from *350 common sense and experience, that certain areas are known for drug activity, that trafficking in drugs is a dangerous occupation, that drug dealers are generally armed and ... place crack cocaine in matchboxes.
This rationale applies to these circumstances as well. Accordingly, we find that McConnell had probable cause to believe that the matchbox he saw in Myers' pocket contained illegal contraband.[3] Upon finding cocaine in the box, the officer then had probable cause to arrest Myers for possession of cocaine. We find no error in the trial court denial of Myers' motion to suppress. See State v. Hall, 555 So.2d 495 (La.App. 4th Cir.1989), writ denied, 577 So.2d 44 (La.1991), which upheld seizure of foil packets that officers recognized from their experience as a commonly used method of packaging narcotics; State v. Davis, 555 So.2d 633 (La.App. 4th Cir. 1989), rev'd in part on other grounds, 566 So.2d 959 (La.1990), which upheld the plain-view seizure of a tightly-wrapped white package on the console of a parked vehicle; See also Willis, supra, which upheld the seizure of crack pipes pursuant to the "plain feel" doctrine; State v. James, 98-2348 (La.App. 1st Cir.06/25/99), 740 So.2d 200, which upheld the search of a film canister "felt" by police during a patdown search when the officer knew that drug offenders kept drugs in such containers; State v. Williams, 98-3059 (La.App. 4th Cir.03/03/99), 729 So.2d 142, which upheld the seizure of cocaine from a large bag of individually-wrapped bags felt during a pat-down search based upon the "plain feel" doctrine; State v. Sheehan, 97-2386, (La.App. 4th Cir.12/09/98), 740 So.2d 127, which upheld the search of a cigarette pack felt during a pat-down search based upon the "plain feel" doctrine.

Default time
Myers' third assignment of error challenges that portion of his sentence which imposes mandatory jail time in default of payment of court costs.
An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); Jackson, supra. Although a defendant is presumed indigent if he is unable to afford counsel, this presumption may be rebutted with evidence placed into the record establishing defendant's ability to pay. State ex rel. Armstead v. State, 589 So.2d 1050 (La.1991); State v. Gaar, 32,243 (La. App.2d Cir.08/18/99), 746 So.2d 41. A defendant may be found indigent for representation purposes, but may be able to pay a reasonable fine and costs. See State v. Moreau, 31,879 (La.App.2d Cir.03/31/99), 735 So.2d 717, 723, where the court remanded the case to the trial court for a determination of indigency in a case involving a defendant who had appointed counsel but frequented nightclubs and was gainfully employed at the time of his arrest; See also State v. Collins, 32,409 (La. App.2d Cir.12/08/99), ___ So.2d ___, ___, 1999 WL 735863; State v. Bell, 32,869 (La.App.2d Cir.12/08/99), ___ So.2d ___.
In the present case, the record shows that Myers was represented at trial and on appeal by appointed counsel. Nevertheless, at the time of ordering the payment of costs by Myers, the court explicitly inquired into the defendant's employment history. Only after Myers informed the court that his employment as a notary public produced regular income for him *351 did the court impose the twenty-five day jail time in default of payment of costs. We find this exchange to have been not only an adequate inquiry into Myers' ability to pay, but also evidence sufficient to rebut the presumption of Myers' indigency as it pertains to the payment of costs. Accordingly, under these facts, the trial court committed no error in imposing the jail term in default of the payment of court costs.

Error Patent
We note that the trial court failed to advise Myers regarding the prescriptive period for filing post-conviction relief pursuant to La.C.Cr.P. art. 930.8. Although this apparent oversight is not grounds for reversal under La.C.Cr.P. art. 921, the required notice is designed to apprise the defendant in advance about the statutory limitation. Accordingly, the district court is hereby directed to send appropriate notice in accordance with the newly amended provisions of La.C.Cr.P. art. 930.8 (Acts 1999, Reg. Sess., No. 1262) within thirty days of the rendition of this opinion, and then file, in the record, proof that Myers received such notice. State v. Morvan, 31,511 (La.App.2d Cir.12/09/98), 725 So.2d 515, writ denied, 99-0186 (La.05/28/99), 743 So.2d 659.

CONCLUSION
For the foregoing reasons, Myers' conviction and sentence are affirmed. The trial court is directed to send appropriate notice to Myers of post-conviction relief time delays within thirty days of the rendition of this opinion, and then file, in the record, proof that Myers received such notice.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
In this Terry stop where the initial reasonable suspicion for the stop and the justification for the pat-down can be questioned, I must respectfully dissent from my understanding of the law as reviewed by the United States Supreme Court in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). See also, State v. Barney, 97-777 (La.App. 5th Cir.2/25/98), 708 So.2d 1205. From my review of the testimony, the officer stated that after the pat-down was conducted, he had no reason to believe the defendant was armed and dangerous. Only then, after the investigatory stop and the pat-down had concluded and the defendant was free to leave, did the discussion of the matchbox begin. The officer did not indicate that he was still in close proximity to the defendant nor that the defendant made any sudden moves demonstrating an attempt to use the alleged dangerous matchbox. The majority's justification of the officers' actions under the "plain view" doctrine takes the meaning of plain to an ultra level. The search of the matchbox therefore must be suppressed.
Before NORRIS, WILLIAMS, CARAWAY, PEATROSS and KOSTELKA, JJ.

ON REHEARING
CARAWAY, J.
We granted rehearing to consider whether the search and seizure of a matchbox of cocaine by the officer in this investigatory stop was constitutionally permissible. Finding that no probable cause existed to justify the search and seizure and that the officer did not point to particular facts for a rational belief that the defendant was armed or dangerous, we reverse the ruling on the motion to suppress and defendant's conviction.

Facts
While the facts as set forth in the original opinion of this court accurately establish the sequence of events regarding Officer Mike McConnell's stop, pat-down and questioning of Myers, the timing and results of those events should be detailed further. McConnell testified that he initially *352 conducted a pat-down search to alleviate his safety concerns. No weapon or other suspicious object was detected, and McConnell stated that he had no reason to believe that Myers was armed and dangerous.
McConnell then engaged Myers in conversation for up to three minutes during which time the officer, while not specifically recalling in his testimony at trial, would have obtained Myers' name and address. Prior to the subject of the matchbox arising, without anything which could cause further suspicion or probable cause for arrest, the defendant was free to leave. Myers was not instructed that he was free to leave, but McConnell acknowledged three times in his testimony that he considered that Myers was free to leave.
At that point in the investigatory stop, McConnell focused on the matchbox. The matchbox was 2-inches by 1½-inches by ½-inch. The record does not describe the type or color of Myers' shirt. Whether McConnell could see through the shirt or see only the impression of the matchbox was not revealed in the state's case. McConnell provided at trial the following description of events:
"A. .... I observed Mr. Myers had a matchbox in his front breast pocket. I asked if he smoked and he said no. Then I asked what do you have matches for, and he stated what matchbox. Through past experience narcotic users sometimes keep their narcotics in matchboxes. They also keep razor blades in there for cutting it up. They also keep brillo pads for a filler in their crack pipe. I asked him what he had the matches for and he asked what matchbox. At that point I grabbed him to keep him from destroying the evidence.
Q. Officer, do you remember if at this point you had given any indication to the defendant where you thought the matchbox was located?
A. No, ma'am.
Q. You had not?
A. No, ma'am.
Q. You said you grabbed his hand?
A. Yes, ma'am. He attempted to enter into his pocket and I grabbed his hand to keep him from obtaining a razor blade or to keep him from destroying evidence.
Q. What did you then do?
A. I pulled the matchbox and shook it. Matches inside a box make a distinctive noise. It sounded like a BB or a pea rattling around in there which gave me more reason to believe that it possibly contained a rock of cocaine.
Q. Did you open the box?
A. Yes, ma'am.
Q. What did you see?
A. It was a rock of crack cocaine."

Discussion
The finding by the trial court of reasonable suspicion justifying the investigatory stop pursuant to La.C.Cr.P. art. 215.1 and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), was correctly affirmed by this court in the initial opinion. We have further considered that ruling in view of the ruling in Illinois v. Wardlow, ___ U.S. ___, 120 S.Ct. 673, 145 L.Ed.2d 570, (1/12/00), which was rendered after our initial opinion. Although Myers was stopped while walking (not running) along a sidewalk without exhibiting any nervousness prior to McConnell's stop, the officer testified that Myers had just exited a house where drug transactions had occurred that day as confirmed by prior drug arrests. Myers exited carrying something in his hand. For the reasons given in the initial opinion, therefore, the investigatory stop in this case was justified.
The legality of the search and seizure of the matchbox is urged on the grounds that: (i) the matchbox's incriminating character was immediately apparent *353 as contraband under the plain view doctrine, or (ii) it was recognized and seized pursuant to a lawful Terry frisk for officer's safety. We will examine both of these assertions.
Our state and federal constitutions prohibit unreasonable searches and seizures so that every person shall be secure in his person. U.S. Const. amend. IV and La. Const., Art. I, § 5 (1974). Warrantless searches are, per se, unreasonable unless they can be justified under one of the narrowly drawn exceptions to the constitutional warrant requirement. State v. Tatum, 466 So.2d 29 (La.1985). A warrantless seizure of an item that comes within plain view of an officer in a legitimate position to view the item may be reasonable under the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1972). This so-called "plain view" doctrine is an exception to the warrant requirement for searches and seizures under the Fourth Amendment and Article I, § 5 of the Louisiana Constitution.
In Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), the United States Supreme Court addressed the legality of a search of an apartment where certain expensive stereo components raised a reasonable suspicion in the policeman's mind that the items were stolen property. The officer was lawfully in the apartment in the position to observe the items because of the firing of a weapon through the floor of the apartment and the injury of a man in the apartment below by a bullet. While in the apartment, the police had seized a sawed-off rifle and a stocking-cap mask. The combination of the weapon, the mask, and the stereo equipment therefore clearly gave the officer reasonable suspicion that the equipment in plain view was stolen. With that suspicion, the officer further examined the items, moving the equipment to locate and record the serial numbers which were then reported to headquarters and determined to match serial numbers of equipment taken in an armed robbery. The defendant contested his eventual conviction of robbery because of the warrantless search of the stereo equipment.
The court in Hicks was faced with the question of whether probable cause is required in order to invoke the "plain view" doctrine or whether only reasonable suspicion would suffice. The court ruled that probable cause was necessary and that the officer had conducted a search of the stereo equipment for the serial numbers in the absence of probable cause that the equipment was stolen. Thus, the officer went beyond merely viewing an item, which was an ordinary consumer product and not contraband, to further explore and search the item so that his suspicion of the item's possibility as evidence of a crime could be confirmed. In the language of the earlier opinion in Coolidge, supra, the stereo equipment was not "immediately apparent" as evidence of a crime without a further exploratory handling of the equipment which went beyond plain view and entered the realm of a full-blown search.[1]
The examination and handling of an item are also the focus in the so-called "plain feel" situation addressed in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Since the "plain feel" cases involve the pat-down search pursuant to an investigatory stop where probable cause for an arrest is not present, the necessary review of the circumstances amounting to plain feel is analogous. In Dickerson, the officer conducting the pat-down squeezed and manipulated the small item in the defendant's *354 pocket. Ruling that the character of the object was not immediately apparent to the officer as cocaine and that the manipulation went beyond the permissible invasion of privacy of the pat-down to an unauthorized search, the court justified its decision on the basis of the Hicks rationale, stating:
"Once again, the analogy to the plainview doctrine is apt. In Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), this Court held invalid the seizure of stolen stereo equipment found by police while executing a valid search for other evidence. Although the police were lawfully on the premises, they obtained probable cause to believe that the stereo equipment was contraband only after moving the equipment to permit officers to read its serial numbers. The subsequent seizure of the equipment could not be justified by the plain-view doctrine, the Court explained, because the incriminating character of the stereo equipment was not immediately apparent, rather, probable cause to believe that the equipment was stolen arose only as a result of a further searchthe moving of the equipment that was not authorized by a search warrant or by any exception to the warrant requirement. The facts of this case are very similar."
Minnesota v. Dickerson, supra at 113 S.Ct. 2139.
In this case, reasonable suspicion, not probable cause, served as the basis for the Terry stop. The state never argues that that suspicion at any time developed into probable cause for Myers' arrest before the officer removed the matchbox from Myers' pocket and opened it. This search of Myers' person has therefore not been asserted as a permissible search incident to lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In fact, before the matchbox discussion commenced, the initial stop had reached a point where Myers was free to go. Even the initial ruling of this court admits that probable cause to arrest arose under these circumstances only "upon finding cocaine in the box."
Considering the convergence of the concepts of probable cause for arrest and for a search in the reasonably suspicious setting of this investigatory stop, we do not find that probable cause materialized by the observation and discussion of the matchbox. Probable cause exists when the facts and circumstances are sufficient to justify a person of average caution in the belief that the person to be arrested has committed or is committing an offense and, for purposes of a search, that evidence or contraband may be found at the place to be searched. State v. Hunter, 375 So.2d 99 (La.1979); State v. Duncan, 420 So.2d 1105 (La.1982); cf. State v. Ferrand, 664 So.2d 396 (La.1995). Nevertheless, "probable cause is a fluid conceptturning on the assessment of probabilities in particular factual contextsnot readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). As our Louisiana Supreme Court has observed in considering a similar Terry stop situation, "[w]hen the police do not know for certain that a crime has been committed, then more and better evidence is needed to establish probable cause." State v. Hunter, supra p. 102. Under the circumstances of this case, when the officer began the intrusion into the defendant's pocket to search for what he suspicioned to be a matchbox of cocaine, probable cause to believe that cocaine was present did not exist and could arise only after the result of the further search. The similarity of the circumstances in Hicks and Dickerson and the suppression rulings by the United States Supreme Court in those cases require us to reject the application of the plain view doctrine in this case.
The next issue concerning the officer's safety during the investigatory stop is addressed in La.C.Cr.P. art. 215.1(B) as follows:

*355 "B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person."
The officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917, 935 (1968).
Under the particular facts of this case, Officer McConnell had initially frisked Myers and found no weapon or other object to indicate that Myers was armed and dangerous. While such initial pat-down, of course, does not preclude the possibility that officer safety may yet become a concern by a suspect's further actions, Officer McConnell's description of the matchbox incident and the small size and location of the matchbox leave considerable doubt concerning the action that Myers commenced with regard to the matchbox. Whether an aggressive gesture for deployment of the matchbox occurred is not revealed. Given Myers' denial of the existence of the matchbox and the lack of information concerning the proximity of the parties at that moment, no clear inference that a dangerous situation had begun to develop was indicated by the officer's testimony. Moreover, from the testimony quoted above, the officer's focus on the matchbox as incriminating evidence may have been his primary motive for reaching for Myers' hand and removing the matchbox. Accordingly, under the facts of this case on a public street in the afternoon where Myers had previously demonstrated no sign of a threat to the officer's safety, Myers' reaching for his front breast pocket toward a small matchbox is not a sufficient showing that the officer reasonably inferred that Myers was armed and dangerous. The search permissible under Terry and La.C.Cr.P. art. 215.1(B) was not demonstrated by the state in this case.

Conclusion
The trial court's ruling on the motion to suppress was in error for the reasons set forth above. The defendant's conviction is reversed and the case remanded to the district court.
REVERSED AND REMANDED.
NORRIS, C.J., concurs in the result with reasons.
WILLIAMS, J., concurs for the reasons assigned by NORRIS, C.J.
PEATROSS and KOSTELKA JJ., dissent for the reasons assigned in the original opinion.
NORRIS, Chief Judge, concurs in the result with reasons.
I concur in the result, agreeing that the matchbox search was unlawful. However, I am of the further belief that the initial stop of the defendant was not supported by a reasonable, articulated suspicion of criminal activity.
Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and La.C.Cr.P. art. 215.1, a police officer may forcibly stop an individual for investigatory purposes if he has a reasonable suspicion, based on objective facts, that the particular individual has engaged in, is engaged in, or is about to be engaged in criminal activity. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543, (1984); State v. Leary, 627 So.2d 777 (La.App. 2d Cir. 1993). Although La.C.Cr.P. art. 215.1 A authorizes Terry stops under certain circumstances, "[a]n inchoate, unparticularized hunch is insufficient grounds for detention under Article 215.1 A." State v. Denis, 96-0956 (La.App.4th Cir. 3/19/97), 691 So.2d 1295, 1297; State v. Jackson, 26,138 (La.App.2d Cir. 8/17/94), 641 So.2d 1081, 1084.
*356 Recently, the United States Supreme Court has clarified this jurisprudence involving a brief encounter between a citizen and a police officer on a public street, stating:
In Terry, we held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or "hunch" of criminal activity." Terry, supra, at 27.
Illinois v. Wardlow, ___ U.S. ___, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (1/12/00).
In the instant case, the record is clear that Lane, although he was walking out of what officers characterized as a "drug house," was walking down the public street, minding his own business and not otherwise exhibiting suspicious behavior. Although the officers later claimed that they observed him carry a "package" which ultimately turned out to be groceries, there was no mention of it at the pretrial suppression hearing as a suspicious factor to support the officers' belief of possible criminal activity. Further, as the officers followed him in their car, Lane did not attempt to flee, discard any items, or otherwise show signs of agitation prior to his stop. As recognized by the majority, the officers' sole justification for the stop was Lane's exiting the known drug house.
As such, there is nothing in the present case to suggest that it does not fall under the Supreme Court's clear statement that:
An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).
Illinois v. Wardlow, supra.
Accordingly, I would find the initial stop unlawful as well as the subsequent search.
KOSTELKA, J., dissents.
For the reasons assigned in the original opinion, I respectfully dissent from the majority decision.
NOTES
[1] We are aware of the Supreme Court pronouncement in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) which established the "plain feel" extension to the "plain view" doctrine. In Dickerson, when making a Terry frisk, the officer felt a small lump in defendant's pocket. Only after examining the lump with his fingers did the officer determine the item to have been cocaine. Because the incriminating character of the evidence was not immediately apparent to the officer, the court found the subsequent seizure of cocaine to have been unconstitutional. On those factual grounds, we distinguish the present case from Dickerson.
[2] We are mindful of the seemingly conflicting fifth circuit decision in State v. Barney, 97-777 (La.App. 5th Cir.02/25/98), 708 So.2d 1205. Considering McConnell's knowledge, experience and immediate response to the matchbox, we choose to follow the Stevens interpretation of the Supreme Court's "immediately apparent" requirement.
[3] We also find the initial seizure of the matchbox to have been made pursuant to a lawful Terry frisk. McConnell's experience, and Myers' movement toward the removal of the box from his pocket, were adequate both to continue a reasonable suspicion that a crime had been committed and rekindle a reasonable belief of harm which had not been previously considered by McConnell. Then, the remaining factors, i.e., high crime location, Myers' admission that he did not smoke and exculpatory statements regarding his possession of the box, are sufficient to establish probable cause to search the matchbox. See Stevens, supra.
[1] Reliance on Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), to justify the plain view doctrine in this instance is misplaced. In Brown, the officer not only observed a heroin-filled balloon but also small plastic vials and loose white powder in the vehicle before the balloon was further examined by the officer. Likewise, because the search involved an automobile, the lower expectation of privacy pertaining to the contents of an automobile is a distinguishing factor.