11 DREW, Judge.
By a 10-2 vote, a petit jury convicted Victor C. Sellers of simple possession of cocaine, a violation of La. R.S. 40:967.C., punishable by imprisonment with or without hard labor for not more than five years. Defendant had been charged by amended bill of information with possession of cocaine with intent to distribute. *160 Thereafter, defendant judicially admitted being a second felony offender. The court sentenced him to serve nine years at hard labor and denied a motion for reconsideration of sentence. We affirm.
DISCUSSION

Motion to Suppress

The defense argues that because the police officers did not actually see defendant drinking beer in public, and because one of the other men, Jackson, testified that only he had possession of the beer, the police had no reasonable suspicion that defendant was violating the open container law or loitering. Further, the defense contends that even if there was reasonable suspicion justifying the investigatory stop, there was no reason to believe defendant was armed and dangerous, so as to justify a pat down. The state justifies the investigatory stop because defendant was in violation of Monroe City Ordinance 12-231 which prohibits possession and/or consumption of alcoholic beverages in public places. Further justification is alleged on account of the incident occurring at night, in a high crime area known for drug trafficking.
At the suppression hearing, Detective Richardson testified that he has six years’ experience with the Monroe Police Department. On December 16, 1999, Richardson and his partner, Detective Johnson, members of the Monroe Narcotics Unit, were patrolling the area of the Blue Light Lounge, 12an area known for drug trafficking. The officers saw defendant “standing out front with a forty-ounce beer in his hand.” Richardson, who was in uniform, announced himself to defendant and “advised him I needed to pat him down for weapons/’ Richardson conducted a pat down for weapons but did not feel any. Richardson then asked defendant to place his hands on the wall “for officer safety and for his safety alike”.
While Richardson talked to the other people, he noticed defendant pull off his right glove, reach into his jacket pocket and pull out an object with a clenched fist and place it on the wall. Richardson walked back to defendant and shined a flashlight on his hands to make sure he did not have any weapons. Richardson asked defendant to open his hand. In response to this request, the defendant did so, at which time Richardson saw a plastic bag that appeared to contain two rocks of crack cocaine.
Richardson placed defendant under arrest and advised him of his rights per Miranda. Defendant said he understood. When asked if he had any other narcotics, defendant “kind of shrugged.” Richardson and his partner conducted a contemporaneous custodial search incident to the arrest and found a bag of marijuana in defendant’s front left pocket. Defendant volunteered that he was “attempting to pay off a fine and as soon as he paid off the fine, he was going to stop selling cocaine”.
Richardson said he initially approached defendant because he was standing in front of the club “in an open container violation,” which is a violation of a city ordinance. The forty-ounce container was clearly visible, although there was a bag around the bottom of it. There was no top on the container. Richardson did not see defendant drinking from the bottle.
On cross, Richardson said he and his partner were in this area due to a 13lot of drug activity “and other crimes”. The police did not charge defendant with a violation of the open container law. Richardson smelled beer in the container, put it down and did not go back to it. He could not remember the brand name, but he did remember that the cap was off the bottle. *161 This occurred at about 8 p.m. during the month of December, after dark. Richardson did not recall Louis Ray Jackson being at the scene. Richardson also did not recognize any of the witnesses who were placed under the rule for this hearing as having been at the scene. A total of three individuals were patted down outside the Blue Light Cafe.
Louis Ray Jackson, testifying for the defense, told the court he was a friend of defendant. Jackson initially denied having any prior record, but admitted he had a prior conviction for “possession”. On the night in question, Jackson and defendant had been drinking. Defendant went in the club to use the restroom. When he came out, “the law pulled up and told us to get against the wall.” Jackson said he, not defendant, was in possession of the beer bottle. According to Jackson, the men were sharing the bottle, but asserted that defendant didn’t drink any of the beer. Allegedly another man, “Tubb,” was present with Jackson and defendant. According to Jackson, the officers saw Jackson drinking the beer. Jackson was not charged with an open container violation. After the police searched Jackson they allowed him to leave. Jackson did not hear any conversation between defendant and the police.
On cross, Jackson clarified that he and defendant had shared the beer before defendant went into the club but defendant did not drink any of it after he exited the club. In addition to defendant, Jackson and Tubb, there were a lot of people outside the club but they left “when the law got out of |4the car”. Jackson did not know what defendant had in his hand, but it was not a beer. There were several other people in the parking lot drinking beer, according to Jackson.
“After judging the credibility of the witnesses,” the trial court denied the motion to suppress on finding a reasonable suspicion of criminal activity existed and justified the investigatory stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court found that defendant had an open container which justified an arrest. Detective Richardson was justified in making sure the object gripped in defendant’s hand was not a weapon. When crack cocaine was found, probable cause to arrest was present. The court properly ruled this was not an illegal search. On observing the defendant possessing and/or consuming alcohol in a public place, the officers properly made an investigatory stop and conducted a pat down frisk for weapons. The drugs were not found during the pat down frisk. The cocaine was found after the pat down (frisk), when defendant acted suspiciously by putting his hand in his pocket and taking out something, and then holding it, partially hidden in his hand.
At trial, Detective Richardson related the same basic facts to the jury. However, he clarified that he had a total of over 13 years’ experience as a police officer. Richardson identified defendant as the person who was drinking beer in the parking lot. Detective Johnson talked to the other two men while Richardson was involved with defendant. They were about five feet apart. Richardson elaborated on the chain of custody of the crack cocaine. The crime lab verified that the substances seized from defendant were crack cocaine and marijuana.
Detective Mark Johnson testified he has been a police officer for 131 Byears, the last 7 with the Monroe Police Department. Johnson saw three subjects in the parking lot “consuming alcoholic beverages.” The police pulled in to investigate an open container violation. Richardson confronted defendant about the violation while Johnson talked to the other men, about three *162 feet away from Richardson. Johnson heard Richardson ask “what’s that.” Johnson looked over and saw Richardson take something from defendant’s right hand and advise defendant of his Miranda rights. The defendant said he was going to sell the crack to pay some court fines. On cross, Johnson was sure there were three men in the parking lot when the police pulled in, each of the three men possessing a forty-ounce beer bottle.
On redirect, Johnson testified that the area where this incident occurred is such a high trafficking area that the Monroe Police Department received a federal grant to saturate the area with police. “It’s a very out of control high crime narcotics distribution area”, according to Johnson, who testified as to having made at least 20 felony narcotics arrests at the Blue Light Cafe. The state rested.
Louis Ray Jackson, testifying for the defense, told the jurors he had a prior conviction for possession of cocaine. He also had “a weed charge”. Jackson related basically the same story he told during the suppression hearing. Defendant bought some weed during the day, but on cross examination Jackson couldn’t remember where. It was from “some guy on a bike”.
On cross, Jackson also admitted he had several theft convictions, and he had a conviction for selling fake cocaine. He also had a conviction for possession of CDS with intent to distribute, and the weed charge also was for possession with intent to distribute. On redirect, Jackson denied that | defendant possessed a beer when the police arrived.
The defendant testified that on the day in question: (1) He and Jackson had consumed some beer and intended to smoke some weed; (2) He did not have a beer in his hand when the police arrived, but Jackson did; (3) The officer did not say anything about having a beer; (4) The marijuana the police found was in defendant’s glove; (5) He denied “any recollection of any knowledge about cocaine being seized;” (6) The officer took $98 from defendant’s wallet and said it was seized; and (7) He again denied that he possessed any cocaine at the time of this incident.
When confronted with the crack cocaine which was in evidence, defendant said it did not look like crack to him. Defendant denied having any crack on him when he was searched. He further advised that the police almost ran over him when they pulled up.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. La. C.Cr.P. art. 215.1; Terry v. Ohio, supra; State v. Fauria, 393 So.2d 688 (La.1981); State v. Taylor, 363 So.2d 699 (La.1978). The right to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Washington, 621 So.2d 114 (La.App. 2d Cir.1993), writ denied, 626 So.2d 1177 (La.1993); State v. Patterson, 588 So.2d 392 (La.App. 4th Cir.1991); State v. Thibodeaux, 531 So.2d 284 (La.App. 3d Cir.1987). Reasonable cause for an investigatory stop is something less than probable cause. The officer must have “articu-lable knowledge” of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal 17activity. State v. Flowers, 441 So.2d 707 (La.1983), U.S. cert. denied; State v. Rodriguez, 396 So.2d 1312 (La.1981); State v. Washington, supra; State v. Thibodeaux, supra.
In a factually similar case, State v. Leary, 627 So.2d 777 (La.App. 2d Cir. *163 1993), writ denied, 93-3187 (La.3/25/94), 635 So.2d 237, the police were checking “hot corners” in Shreveport where drug trafficking, drinking and shootings regularly occurred. At 10:55 p.m., three officers encountered four men in violation of a city ordinance prohibiting consumption of alcohol on any public street. The police ordered the men to place their hands on a wall and frisked them for weapons. When Leary tried to break away, a police officer grabbed him and felt a weapon. Leary was arrested. A search incident to the arrest disclosed some marijuana. Leary was charged with being a felon in possession of a firearm. Leary appealed the legality of the stop and frisk. This court stated the question of whether an officer has a reasonable suspicion to make an investigatory stop should be judged under the totality of the circumstances, citing Terry, supra, and citing U.S. v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). “The officer’s experience may be considered in determining whether his inferences from the facts at hand were reasonable.” Leary, supra.
Leary was holding an open container inside a brown paper bag while outside a liquor store in a known high crime area. Therefore, the police officers had reasonable cause to believe Leary was violating the open container ordinance and the detention was proper under Terry, supra. As to the frisk, the presence of a weapon was something the officers could rightfully anticipate and fear. This court held that “under these [ Scircumstances, it cannot be said the common practice of the police to frisk suspects for the officers’ protection (as well as the safety of the general public) prior to questioning the suspects regarding criminal activity is unreasonable or unwarranted, especially in a situation where the police officers are out-numbered.” Leary, supra.
The evidence adduced at the hearing on the motion to suppress and at trial shows this incident occurred at night in a high crime area, known for drug trafficking. The two police officers were outnumbered by three suspects. The defendant was visibly in violation of the open container ordinance. Therefore, the police had reasonable suspicion by which to make the investigatory stop and they were warranted in making the weapon frisk for officer safety. The officer’s conduct was reasonable. The stop and frisk was valid and not a violation of defendant’s right against unreasonable search and seizure. After the initial frisk, the defendant acted suspiciously by pulling something from his jacket pocket and concealing it in his hand. At this point, the seizure actually occurred. Detective Richardson could reasonably anticipate and fear that the unknown, hidden object might be a weapon. Therefore, he had reasonable cause to investigate further, and request that the defendant reveal what he had in his hand. State v. Shaw, 31,786 (La.App. 2 Cir. 3/31/99), 736 So.2d 951.
Any responses to questioning were after the administration of Miranda. The district court here did not err in denying the motion to suppress.

Insufficient Evidence for Adjudication as Second Felony Offender

Defendant had prior convictions, all arising from one case, for attempted second degree murder, conspiracy to commit second degree pmurder and accessory after the fact to attempted second degree murder. The record was supplemented after the assignments were filed. Defense counsel, in a letter dated May 18, 2001 (following the defense brief), stated she found “no appealable errors relating to the habitual offender hearing. For this reason, no supplemental brief will be filed in *164 this appeal.” Thus, this assignment is abandoned.

Excessive Sentence

The motion for reconsideration states that the sentence is “cruel and unusual and beyond the scope of the Court’s authority”. This court has a duty to review the record to determine whether a sentence is excessive. In addition to conceding that the district court correctly adjudicated defendant as a second felony offender, defense counsel conceded that the trial court adequately articulated its reasons for sentence.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Prior to imposing sentence, the court reviewed a PSI report. The court considered the facts of the case, noted that defendant .was 37 years old, and gave very detailed reasons for this sentence. The court discussed defendant’s criminal history with convictions for conspiracy to commit second degree murder, attempted second degree murder and accessory after the fact to that offense. Those charges had been reduced through a plea bargain; the victim in the case had been killed. Defendant was on parole at the time of the instant offense and had been lectured several times by his |inparole officer for committing offenses while in that status. The PSI showed defendant’s social background and his employment record. He also had prior arrests and convictions for damage to property, aggravated assault, hit and run, and cruelty to a juvenile. Defendant claimed, in a letter to the court, that he merely found the cocaine in the restroom at the bar. Defendant had been employed at a Piccadilly Restaurant from the time he was paroled in 1994 until two months before the instant offense. The court went through the considerations listed in La. C.Cr.P. art. 894.1 and found no excuse, justification or mitigation for the offense. The court noted the convicted offense did not reflect the magnitude of the crime committed. At trial, defendant had perjured himself by denying possession of the cocaine and implying that Detective Richardson had planted it.
There is no showing of a manifest abuse of sentencing discretion. As an adjudicated second felony offender, he faced from five to ten years at hard labor. The sentence is neither grossly disproportionate to the severity of the offense nor shocking to the sense of justice. The court’s articulation and the matters of record more than adequately support the sentence imposed on this second felony offender. Therefore, the sentence is not constitutionally excessive and is lawful.
DECREE
The conviction and sentence are AFFIRMED.