CPEATROSS, J.
Defendant, Melvin Dumas, was charged with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Following the denial of his motion to suppress evidence and statements, Defendant pled guilty as charged, but reserved his right to appeal the trial court’s ruling under State v. Crosby, 338 So.2d 584 (La.1976). Defendant was sentenced to ten years at hard labor, without benefit of parole, probation or suspension of sentence, and to pay a fine of $1,000. Defendant now appeals the trial court’s denial of his motion to suppress. For the reasons set forth herein, Defendant’s conviction is vacated and his sentence set aside.
FACTS
On November 19,1998, at approximately 2:15 p.m., Defendant and another man, Bryan Marlin, were walking in the middle of Cornwell Street in the Highland area of Shreveport. They walked in front of and were almost struck by a patrol car driven by Officer Pierce of the Shreveport Police Department. Officer Pierce was transporting a suspect in an unrelated case so he continued driving. Officers Isaiah Jackson, III, and Ron Vanni, who were following Officer Pierce in another patrol car, stopped to investigate. Thinking that Defendant and Mr. Marlin might have been intoxicated or have some other problem, the officers called out to the men. Mr. Marlin immediately responded, but Defendant continued walking. When he was summoned again, Defendant turned and walked over to the officers.
Subsequent to the stop, the officers conducted a pat down search of the two men. Mr. Marlin was not armed. Defendant, however, was carrying a loaded .25 automatic pistol in his back pants pocket. Defendant was advised of his Miranda rights and was arrested for possession of a firearm by a convicted felon. While Defendant admitted that he knew carrying the firearm was a violation of his l2probation, he told the officers that an individual named Remedro Williams had been punching him in the face and that he was carrying the weapon for protection.
After being charged by bill of information with possession of a firearm by a convicted felon, Defendant pled not guilty and a preliminary examination was held on January 4, 1999. The trial court determined that there was probable cause to hold Defendant for trial as charged. Defendant then filed a motion to suppress the gun and the statements he made to officers following his arrest. After a hearing on March 4, 1999, the trial court denied the motion to suppress. The court found that both the stop and the pat down search were valid. The court noted that walking in the middle of the street is a violation of Shreveport City Ordinances 90-459 and 90-462.[1] The court further found that the *442 officers had reasonable suspicion to stop Defendant and his companion to advise them that it was unsafe to walk in the roadway and to determine if they were intoxicated or otherwise impaired. Regarding the validity of the pat down frisk, this finding was based primarily on the fact that the officers were personally familiar with Defendant and with his criminal history.[2]
As previously stated, on March 5, 1999, Defendant entered a plea of guilty as charged, reserving his rights under State v. Crosby, supra, to appeal the trial lacourt’s decision on the motion to suppress. Defendant appealed, claiming that the trial court erred in denying his motion to suppress. He argues that the gun taken from his person and the statements he made to law enforcement officers following his arrest were obtained in violation of the rights guaranteed him by the Fourth Amendment and were improperly admitted against him.
INVESTIGATORY STOP
When reviewing a ruling on a motion to suppress, based on findings of fact, great weight is afforded to the trial court’s determination, as it had the opportunity to observe the witnesses and to weigh the credibility of their testimony. State v. White, 27,188 (La.App.2d Cir.8/23/95), 660 So.2d 515.
The Fourth Amendment of the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct, however, is recognized by La.C.Cr.P. art. 215.1, as well as both federal and state jurisprudence.[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Stewart, 97-2399 (La.App. 1st Cir.9/25/98), 721 So.2d 925. Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the | individual’s right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based on reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Tucker, (La.App. 2d Cir.1992), 604 So.2d 600, affirmed in part, reversed in part, 626 So.2d 707 (La.1993); State v. Stewart, supra; State v. Colarte, 96-0670 (La.App. 1st Cir.12/20/96), 688 So.2d 587, writ denied, *443 97-1015 (La.10/3/97), 701 So.2d 197. Under such circumstances, a law enforcement officer may stop a person and may demand of him his name, address and an explanation of his actions. State v. McHugh, 92-1852 (La.1/6/94), 630 So.2d 1259. The necessary reasonable suspicion has been defined as “articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, is sufficient to provide reasonable grounds to suspect criminal activity.” State v. McBarry, 97-0025 (La.App. 4th Cir.8/20/97), 699 So.2d 127. The officer must have sufficient facts within his knowledge to justify an, infringement of the suspect’s rights. An inchoate or un-particularized hunch or mere suspicion is insufficient to establish reasonable grounds to stop a person. State v. Tucker, supra; State v. Leary, 627 So.2d 777 (La.App. 2d Cir.1993), writ denied, 93-3187 (La.3/25/94), 635 So.2d 237.
In order to assess the reasonableness of an officer’s conduct, it is necessary to balance the need to search or to seize against the harm of invasion. State v. Stewart, supra. Whether an officer has a reasonable suspicion to make an investigatory stop should be determined under a totality of the circumstances, in light of the officer’s experience, training and common sense. The officer’s experience may be a consideration in ascertaining whether his inferences from the given facts were reasonable. State v. White, 27,188 (La.App.2d Cir.8/23/95), 660 So.2d 515, writ denied, 95-3045 (La.4/25/97), 692 So.2d 1076.
| ^Flight, a furtive gesture, nervousness, or startled behavior at the sight of a police officer is not, by itself, sufficient to justify an investigatory stop. This type of conduct, however, may be a factor leading to a finding of reasonable suspicion. Presence in a high crime area, coupled with nervousness or flight or suspicious actions on approach of officers is sufficient to justify an investigatory stop. Such a high crime area is a place in which the character of the area gives color to conduct which might not otherwise raise the suspicion of the officer. State v. White, supra
To assess the validity of an investigatory stop under Terry v. Ohio, supra, and its Louisiana statutory equivalent, La. C.Cr.P. art. 215.1, the critical inquiry must focus on the knowledge in the officer’s possession at the time of the stop and whether that knowledge constitutes reasonable cause for a stop. State v. Dorsey, 27,509 (La.App.2d Cir.11/1/95), 662 So.2d 857.
In this case, we believe that the officers made a valid investigatory stop. It was readily apparent that Defendant and his companion had violated city ordinances prohibiting walking in the roadway. According to Officer Jackson, the pair was walking in a southbound direction in the middle of the roadway. Officer Vanni testified that the pair was standing in the east side of Cornwell Street and walked out in front of Officer Pierce’s patrol car. When asked why Defendant was stopped, Officer Jackson testified:
Because [Defendant] almost got struck by the vehicle which caused his partner who he was with to move to the right. So it caused [Defendant] to go to the left because he was in the middle of the street, so he went on the left side of the street and [Defendant] was left-Mr. Marlin was on the right. I stopped them because I didn’t know if they were intoxicated or what was going on. Why were they in the street, why did he almost get hit by the vehicle. And I wanted to interview them and let them know that, you know, that’s not a safe procedure.
Due to the risk of harm that Defendant’s action posed to his own safety, the officers acted reasonably in stopping Defendant to tell him not to walk in the roadway and to determine whether he was intoxicated. Terry, supra, recognized | fithat officers can detain individuals to resolve ambiguities in their conduct. In a recent decision, the *444 United States Supreme Court explained Terry as follows:
In allowing [detentions to resolve ambiguities in conduct], Terry accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The Terry stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way.
Illinois v. William a/k/a Sam Wardlow, — U.S. -, 120 S.Ct. 673, — L.Ed.2d -(2000).[4] We find that the conduct of the two men in the present case was ambiguous and that the officers were fully justified in briefly stopping the men to investigate further. Under these circumstances, the trial court correctly found that the officers made a valid investigatory stop of Defendant.
PAT DOWN FRISK
Even after a lawful stop, a police officer is not always justified in frisking a suspect for weapons. State v. Bolden, 380 So.2d 40 (La.1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). Once a police officer has made an investigatory stop and reasonably suspects that he is in danger, he may frisk the outer clothing of the person stopped for a dangerous weapon. La.C.Cr.P. art. 215.1; State v. Tucker, supra.
A weapons frisk is justified, however, only under the circumstances where a reasonably prudent man would be warranted in the belief that his safety or that of others is in danger. To establish reasonable belief, the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Clausen, 97-0885 (La.App. 4th Cir.7/2/97), 697 So.2d 1066, writ denied, 97-2420 (La.3/20/98), 715 So.2d 1207. As the Supreme Court noted in Illinois, supra, if the officer does not learn facts which support an additional intrusion, the individual “must be allowed to go on his way.”
After careful review, we find that the record in the present case does not support the trial court’s finding that the pat down frisk for weapons was warranted. Officer Vanni testified that the pat down frisk was conducted for safety because Defendant was a convicted felon. A reading of Officer Jackson’s testimony, however, reveals no stated justification for the pat down frisk, but does include detailed testimony concerning his involvement with Defendant over the course of the last several years. According to Officer Jackson, that involvement included contact with Defendant on approximately four occasions, none of which were violent encounters.
Based on the above evidence, the trial court found that the pat down frisk was justified. Specifically, the trial court relied on the following circumstances: (1) the officers’ past contact with Defendant; (2) Officer Jackson’s knowledge that the Defendant was on probation for a recent felony conviction; (3) Officer Jackson knew Defendant should not have a weapon; and (4) a prior statement made by Defendant to Officer Jackson that, “you don’t know how crazy I am.”[5] Finally, the *445 trial court characterized the Highland area as a high crime area and seemed to place significance on the officers’ involvement in the Weed and Seed Program described earlier and, thus, their familiarity with the area. On appeal, the State’s sole argument on this issue is that, after the valid stop of Defendant, the knowledge |Rof the officer regarding Defendant’s prior association with people who carry guns and commit crimes and the fact that Defendant was on probation at the time, justified the pat down search. We disagree.
Initially, we note that Defendant’s status as a convicted felon does not justify a pat down frisk. Additionally, we decline to hold that an officer’s knowledge of a defendant’s criminal history alone is adequate to justify a pat down frisk for weapons. See United States v. Hairston, 439 F.Supp. 515 (N.D.Ill.1977); State v. Valentine, 134 N.J. 536, 636 A.2d 505. Furthermore, a comparison of the totality of facts in the present ease to other cases involving similar searches convinces this court that the testimony of Officers Vanni and Jackson falls short of “facts from which the officers could reasonably infer that a ‘substantial possibility of danger’ existed at the time of the frisk.”[6] For example, in State v. Tucker, supra, on which the State relies, there were numerous facts, in addition to the officer’s prior knowledge of the defendant, taken into consideration by this court in upholding the pat down frisk of the defendant: (1) the officer’s knowledge that the defendant habitually carried weapons; (2) the fact that the defendant was stopped on a motorcycle immediately after a call concerning a burglary in which the suspect was riding a motorcycle; (3) there were no other motorcycles in the area; and, perhaps most significantly, (4) the officer’s testimony that he saw a bulge in the defendant’s coat pocket which he thought may be a weapon. Unlike Tucker, no such additional factors are present in the instant case.
In State v. Denis, 96-0956 (La.App. 4th Cir.3/19/97), 691 So.2d 1295, the court found a pat down search to be invalid where the State’s primary argument |9was that the stop and subsequent search had taken place in a high crime area. In discussing the competing interests in a “Terry- stop” case, the court explained:
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state constitutions, however, this right must be balanced against an individual citizen’s right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature’s attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he “reasonably suspects that he is in danger.”
A police officer’s duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government’s intrusion into the fives of its citizens.... [T]he only way a court can determine if the officer reasonably believed that he was in danger is to require him to express that suspicion, and explain upon what it is based.
In the present case, rather than offering evidence which would support a belief that they were in danger, both officers testified that they were not afraid of the two men. We can find no indication in the record that there was any reason for the officers to believe they were in physical danger at *446 the time or that either man was in possession of a weapon.[7] See State v. Hunter, supra. The pat down frisk of Defendant was not justified.
Since we find that the pat down search of Defendant was conducted in violation of his Fourth Amendment rights, the evidence seized as a result of that search and his subsequent statements to the officers should have been suppressed. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The trial court’s denial of Defendant’s motion to suppress was reversible error; therefore, Defendant’s conviction is hereby vacated and his sentence set aside.

hcJDECREE

For the foregoing reasons, Defendant’s conviction is vacated and his sentence set aside.
CONVICTION VACATED; SENTENCE SET ASIDE.
GASKINS, J., dissents with reasons.

. Shreveport City Ordinance Sec. 90-459 provides in pertinent part:
Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway....
Shreveport City Ordinance Sec. 90-462(b) provides:
*442 Where sidewalks are not provided, any pedestrian walking along and upon a street or highway shall, when practicable, walk only on the left side of the roadway, or its shoulder, facing traffic which may approach from the opposite direction.

. Officers Jackson and Vanni were part of the Weed and Seed Program in the Highland neighborhood, a police operation aimed at reducing the crime rate in the area. Officer Jackson recognized Defendant as the individual he had previously apprehended for burglary. Defendant pled guilty to that charge and was on probation at the time the present arrest occurred. The officers had also encountered Defendant on previous occasions while investigating criminal matters.

. La.C.Cr.P. art. 215.1 provides in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.

. Illinois involved an investigatory stop and pat down search revealing a firearm which led to the arrest of the defendant. The case dealt with the validity of the initial investigatory stop only. The validity of the subsequent pat down search and arrest was not before the court.

. Apparently, during an encounter with Defendant concerning the disappearance of vari *445 ous dogs in the neighborhood, Defendant made this comment to Officer Jackson.

. See State v. Hunter, 375 So.2d 99 (La.1979); State v. Willis, 31,561 (La.App.2d Cir.1/20/99), 728 So.2d 493; State v. Drake, 31,528 (La.App.2d Cir.1/20/99), 733 So.2d 33; State v. Owens, 26,952 (La.App.2d Cir.5/10/95), 655 So.2d 603; State v. Jackson, 26,138 (La.App.2d Cir.8/17/94), 641 So.2d 1081; State v. Leary, supra.

. Additionally, we believe it important to emphasize that the officers conducted a pat down of Mr. Marlin prior to the pat down frisk of Defendant. Since, however, Mr. Marlin was not in possession of a weapon, he was not arrested; and, therefore, the validity of his pat down frisk has never been examined. It is significant that, to this court's knowledge, none of the justifications for the pat down of Defendant, as advanced by the State, were present with respect to the pat down of Mr. Marlin.