786 So.2d 80 (2001)
STATE of Louisiana
v.
Melvin DUMAS.
No. 2000-K-0862.
Supreme Court of Louisiana.
May 4, 2001.
Dissenting Opinion May 9, 2001.
Richard Phillip Ieyoub, Attorney General, Paul Carmouche, Dist. Attorney, Catherine Marion Estopinal, Brian Lee King, Assistant District Attorneys, for Applicant.
*81 Caddo Parish Indigent Defender Board, Diane Lee Foster, David R. McClatchey, for Respondent.
Dissenting Opinion of Judge Johnson, May 9, 2001.
PER CURIAM:[*]
In this prosecution for possession of a firearm by a previously convicted felon, La.R.S. 14:95.1, respondent moved to suppress the .25 caliber automatic seized from his back pocket by officers of the Shreveport Police Department assigned to the "Weed and Seed" Program targeting the Highland/Stoner Hill area of the city. After the trial court denied the motion, respondent entered a conditional plea of guilty as charged and sought review of the adverse suppression ruling in the court of appeal. State v. Dumas, 32,925 (La.App. 2nd Cir.1/26/00), 750 So.2d 439 (Gaskins, J., dissenting). The Second Circuit agreed with the trial court that the police officers had reasonable grounds for an investigatory stop based on defendant's apparent violation of city ordinances which prohibit walking in a roadway. Dumas, 32,925 at 5, 750 So.2d at 443 ("Due to the risk of harm that Defendant's action posed to his own safety, the officers acted reasonable in stopping Defendant to tell him not to walk in the roadway and to determine whether he was intoxicated."). However, the court of appeal disagreed with the lower court that the officers also possessed reasonable grounds for patting down respondent and thereby discovering the weapon concealed in his back pocket. The court of appeal "declin[ed] to hold that an officer's knowledge of a defendant's criminal history alone is adequate to justify a patdown," and specifically noted that "rather than offering evidence which would support a belief that they were in danger, both officers testified that they were not afraid of [him]." Dumas, 32,925 at 8-9, 750 So.2d at 445. The Second Circuit therefore concluded that the frisk of respondent was not justified and set aside his conviction and sentence on grounds that the trial court had erred in denying the motion to suppress. We granted the state's application to review the correctness of that decision and now reverse.
In upholding the validity of the initial investigatory stop, the court of appeal properly conducted an objective inquiry into the totality of the circumstances surrounding the encounter. State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 ("The circumstances `must be judged by an objective standard: would the facts available to the officer at the moment of seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?'") (quoting State v. Flowers, 441 So.2d 707, 712 (La. 1983)). As the court of appeal concluded, the apparent violation of city ordinances under circumstances in which respondent was nearly struck in the middle of the street by a police cruiser transporting an arrested individual to the station house provided the requisite "`minimal level of objective justification'" for an investigatory stop. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)).
However, in finding the subsequent pat down frisk of respondent unreasonable, the court of appeal erred in according substantial weight to the testimony of the officers at the suppression hearing that subjectively they were not afraid of respondent. The reasonableness of a frisk conducted as part of a lawful investigatory stop is also governed by an objective standard. The relevant question is not whether the police officer subjectively believes *82 he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing, but "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). See United States v. Baker, 47 F.3d 691, 694 (5th Cir.1995) ("This Court ... has never held that an officer's objectively reasonable concern for safety does not justify a protective Terry pat down for weapons where the officer has no actual fear for his safety."); United States v. Cummins, 920 F.2d 498, 502 (8th Cir.1990)("As we apply an objective standard of reasonableness to this determination [of a valid Terry search], our conclusion is not changed by [the officer's] testimony that he had no subjective fear that either Cummins or [his companion] were armed."); United States v. Tharpe, 536 F.2d 1098, 1101 (5th Cir. 1976) ("We know of no legal requirement that a policeman must feel `scared' by the threat of danger. Evidence that the officer was aware of sufficient specific facts as would suggest he was in danger satisfies the constitutional requirement."); O'Hara v. State, 27 S.W.3d 548, 551 (Tex.Crim. App.2000) ("Regardless of whether [the officer] stated he was afraid, the validity of the search must be analyzed by determining whether the facts available to [the officer] at the time of the search would warrant a reasonably cautious person to believe that the action taken was appropriate.") (footnote omitted); 4 Warren R. La-Fave, Search and Seizure, § 9.5(a), p. 253 (3rd ed. 1996) ("The test is an objective rather than a subjective one, just as with the probable cause needed to arrest or search, and thus it is not essential that the officer actually have been in fear.") (footnotes omitted); see also United States v. Menard, 95 F.3d 9, 11 (8th Cir.1996); United States v. Bonds, 829 F.2d 1072, 1074-75 (11th Cir.1987); Com. v. Joe, 40 Mass.App.Ct. 499, 665 N.E.2d 1005, 1012, n. 13 (1996); State v. Evans, 67 Ohio St.3d 405, 618 N.E.2d 162, 169-70 (1993); State v. Roybal, 716 P.2d 291, 293 (Utah 1986).
In the present case, both officers testified at the suppression hearing that while they were not "scared" of respondent they approached him with caution because they were aware that he was a convicted felon on probation for burglary. While we agree with the majority on the Second Circuit panel that an individual's prior felony record does not alone provide reasonable grounds either for stopping or searching him, "an officer's knowledge of a suspect's prior criminal activity in combination with other factors may lead to a reasonable suspicion that the suspect is armed and dangerous." State v. Valentine, 134 N.J. 536, 636 A.2d 505, 511 (1994). We therefore concur with the dissenting views of Judge Gaskins in the present case that under the totality of the circumstances the officers had a reasonable, objective, and particularized basis for conducting a patdown frisk of respondent. Dumas, 32,925 at 1, 750 So.2d at 446 (Gaskins, J., dissenting). Officer Jackson, who conducted the frisk, knew about respondent's prior burglary conviction because he had arrested or questioned him on at least four prior occasions. One of those incidents had involved respondent's arrest as he emerged from a stolen vehicle in the company of an individual wanted by the police for an armed robbery. Jackson found on the transmission hump between the front seats of the vehicle a .357 magnum pistol which had been accessible to both men. See Valentine, 636 A.2d at 511 ("In many instances, a reasonable inference may be drawn that a suspect is armed and dangerous from the fact that he or she is known to have been armed and dangerous on previous occasions."); State *83 v. Collins, 121 Wash.2d 168, 847 P.2d 919, 922-23 (1993) (officer's knowledge that a holster and ammunition had been present in a vehicle associated with the defendant at the time of his prior arrest for a felony relevant to the reasonableness of frisk pursuant to a Terry stop). On another occasion, Jackson questioned respondent about the theft of dogs and during the interrogation respondent informed the officer that "You just don't know how crazy I am." According to the officer, respondent had been suspected of shooting the dogs. Finally, the stop in the present case had taken place in an area "riddled with crime." The officers frequently patrol it and had thereby gained considerable familiarity with respondent and several of his associates who had also been arrested on burglary charges.
Considering the totality of the circumstances which included Officer Jackson's specific knowledge of defendant's previous association with weapons and with persons carrying weapons, and with known felons, coupled with respondent's presence in a high-crime neighborhood, the trial court correctly denied respondent's motion to suppress on grounds that the officers had not only reasonable suspicion for an investigatory stop but also reasonable grounds to conduct a limited Terry search for weapons.
Accordingly, the decision of the Second Circuit is reversed, respondent's conviction and sentence are reinstated, and this case is remanded to the district court for execution of sentence.
JUDGMENT OF COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
JOHNSON, J., dissents and will assign reasons.
JOHNSON, J., dissenting.
A temporary stop by a police officer of a person in a public place is authorized by LSA-C.Cr.P. art. 215.1, if the officer reasonably suspects the person is committing, has committed, or is about to commit an offense. "Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of a defendant's rights. State v. Thomas, 99-2219 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104.
In this case, Corporal Jackson testified that defendant and another individual were walking in the roadway at two o'clock in the afternoon. According to the officer, there were no sidewalks in the area, and the individuals were not engaged in any criminal activity, and there is no indication in the record that they were about to become engaged in any illegal activity.
There is no challenge to the constitutionality of the ordinance which prohibits walking in the middle of a roadway, but a fair interpretation of the testimony supports a conclusion that the men were attempting to cross the street. Officer Vanni specifically stated, "The subjects crossed from the east side of the road to the west side of the road." He further attested:
They were on thewe were heading north, so they were on the right side of the road, if you will, and then they walked right in front of that police unit going to the left side of the road.
Surely the city ordinance does not prohibit crossing public streets.
Corporal Jackson testified that he recognized defendant as a convicted felon and gave detailed testimony regarding prior *84 encounters with defendant. He stated, "I knew Melvin's criminal history well, real well." Officer Vanni also testified that he was familiar with defendant and had arrested him on two prior occasions.
In my view, this stop was entirely pretextual, especially in light of the fact that neither of the individuals were cited for violation of the city ordinance. The majority seems to support the proposition that persons with prior felony convictions no longer possess the right to walk the public streets and can be stopped without reasonable suspicion or probable cause.
Furthermore, the frisk of defendant's person was not justified. A police officer, for the protection of himself and others, may conduct a carefully limited search for weapons in the outer clothing of persons engaged in unusual conduct where, inter alia, the officer reasonably concludes, in light of his experience, that criminal activity may be afoot and that the persons in question may be armed and presently dangerous. Florida v. J.L., 529 U.S. 266, 269-70, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed. 889 (1968). (Emphasis added).
In this case, the officers' suspicion that defendant was carrying a weapon did not arise from any present observations. One of the officers testified that they conducted the pat down frisk because defendant was a convicted felon. The other officer testified that he had either arrested or questioned defendant on at least three prior occasions, and on one of those occasions, he discovered a gun in a vehicle in which defendant had been riding with some other person. There was nothing in the record to indicate that the gun involved in the previous incident belonged to defendant, and the officer conceded that none of defendant's prior arrests or convictions were related to weapons charges. Neither officer testified that they observed any behavior which would justify a reasonable belief that defendant was armed and presently dangerous.
For the foregoing reasons, I would affirm the court of appeal's decision to reverse the trial court's ruling, vacate defendant's conviction, and set aside his sentence.
NOTES
[*] Philip C. Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.