SUSAN M. CHEHARDY, Chief Judge.
| ¡.On appeal, defendant challenges the trial court’s denial of his motion to suppress evidence. For the following reasons, we affirm and, due to an error patent, remand for correction of the commitment.

Facts and Procedural History

In this case, defendant’s conviction resulted from a guilty plea so the circumstances surrounding the charged offense *126 were gleaned from the record, including testimony presented at defendant’s suppression hearing. The record reflects that, on December 5, 2011, defendant was arrested for possession of heroin, in violation of La. R.S. 40:966(C).
On January 11, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant, Wardell Beal, with one count of possession of heroin, a violation of La. R.S. 40:966(C). On August 8, 2012, the day that trial was to commence, defendant filed a motion to suppress evidence, which was heard and denied. That same day, defendant withdrew his former plea of not guilty and entered a plea of guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976).3 Thereafter, the trial judge sentenced defendant to six years and eight months at hard labor, with credit for time served.
Additionally on August 8, 2012, the State filed a multiple offender bill of information, and defendant stipulated to being a second felony offender. The trial court then vacated defendant’s underlying sentence and imposed an enhanced sentence, pursuant to La. R.S. 15:529.1, of six years and eight months at hard labor without benefit of probation or suspension of sentence.
On September 6, 2012, defendant filed a motion to withdraw his guilty plea, which the trial court denied on May 10, 2013. On June 7, 2013, defendant filed his notice of appeal, which was granted by the trial court on June 10, 2013.

Law and Argument

On appeal, defendant raises two assignments of error regarding the trial court’s denial of his motion to suppress: first, defendant argues that the confidential informant’s uncorroborated tip lacked sufficient indicia of reliability to give an officer the reasonable suspicion to warrant an investigatory stop; and second, defendant argues that the police lacked reasonable suspicion to detain defendant so the pat-down was illegal and the heroin, which was seized from his person, should have been suppressed.
In his' first assignment, defendant asserts that police officers stopped him without attempting to corroborate any information relative to the alleged heroin activity. Defendant further contends that he “was not known to the officers prior to the stop, and they did not observe him involved in any conversations or exchanges with another person, or carrying any packages which might contain drugs.”
Conversely, the State argues that a reliable and credible informant told Detective David Biondolillo specific information concerning defendant’s car, the | ¿location where defendant would be, as well as the date and time that defendant would arrive, which detectives corroborated through surveillance.
At the hearing on defendant’s motion to suppress evidence, Detective David Bion-dolillo (“Biondolillo”) testified that, since 2009, he had been employed in the Narcotics Division of the Jefferson Parish Sheriff’s Office (“JPSO”). In connection with his employment, Biondolillo had received training in the identification and packaging of narcotics for street level sale, distribution, and use. Further, Biondolillo had participated in numerous narcotics investigations, during which narcotics, including heroin, were seized by the police.
Biondolillo participated in the underlying investigation and arrest of defendant, Wardell Beal. Biondolillo stated that, as a narcotics detective, he occasionally used confidential informants to develop leads regarding narcotics distribution and possession, which he did in this investigation. In this case, a confidential informant (“C.I.”), who had always supplied reliable information, told Biondolillo that a man *127 nicknamed “D” would be delivering heroin to someone at the Discount Store, located at 34 West Bank Expressway in Gretna at about 3:00 p.m. on December 5, 2011. The C.I. indicated that the individual possessing the heroin would be driving an older model, green Pontiac Grand Am. The C.I. provided a physical description of “D” along with information that “D” would hold the heroin in one of two places: a pouch inside of the fly of his pants or in his pants’ pocket.
After receiving the tip, Biondolillo and other members of the Narcotics Task Force established surveillance of the business located at 34 West Bank Expressway on December 5, 2011. During the surveillance, Biondolillo was parked in a location so that he and the C.I., who was riding with him, could view the parking lot of the store. At about 2:53 p.m., an older model, green Pontiac Grand Am Rdriven by an individual who matched the physical description of the suspect pulled into the parking lot of the store. The C.I. identified the driver as Wardell Beal.
Biondolillo notified the Task Force that the suspect was in the store and instructed them to conduct an investigatory stop. Task Force members immediately detained Beal, placed him in handcuffs, then brought him out to the parking lot, where Biondolillo encountered the officers and defendant. For safety reasons, Biondolillo immediately conducted a pat-down of defendant’s exterior clothing for weapons. When Biondolillo touched defendant’s left rear pocket, Biondolillo felt a knot with a bag attached to it that was consistent with packaged narcotics. When he retrieved the bag, he observed tan powder, which, based on Biondolillo’s training and experience, was consistent with heroin. Biondo-lillo also testified that the powder field-tested positive for heroin.
At the conclusion of the hearing, the trial court stated: “The court’s satisfied that the officer articulated the reasons for ... the Terry stop. I think the information he got from the confidential informant corroborates the facts that actually took place. I’m going to deny your motion to suppress.”
The Fourth Amendment to the United States Constitution holds that people shall “be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.” Similarly, Article 1, § 5 of the Louisiana Constitution affords even greater protections by providing that “every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.”
Law enforcement officers are, however, authorized by La. C. Cr. P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops to interrogate persons reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983),6 cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Sam, 05-88 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, 383, writ denied, 05-2100 (La.3/10/06), 925 So.2d 510. An investigatory stop necessarily involves an element of force or duress and the temporary restraint of a person’s freedom. State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, 1286. There is the complete restriction of movement in an investigatory stop, but for a shorter period of time than an arrest. Id. at 1287.
“Reasonable suspicion” necessary to conduct an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to *128 justify an infringement on the individual’s right to be free from governmental interference. State v. Triehe, 03-149 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 84, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible. Id.
The sufficiency of an anonymous tip under Terry is determined by the reliability of its assertion of illegality, and not just its tendency to identify a determinate person. Florida v. J. L., 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000). The ability to predict the suspect’s future behavior goes toward reliability, as it demonstrates inside information, i.e., a special familiarity with the suspect’s affairs. Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990). An informant’s past record for accuracy and reliability is another factor taken into account when determining the reliability of the tip in question. State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879, writ denied, 05-0830 (La.l1/28/05), 916 So.2d 143.
17Whether an informant’s tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); State v. Nelson, 02-65 (LaApp. 5 Cir.6/26/02), 822 So.2d 796, 801, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627. Independent corroboration of the details of an informant’s tip by police investigation is valuable when applying the totality of the circumstances analysis. Triehe, supra at 85.
In a hearing on a motion to suppress, the State has the burden to establish the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Lewis, 12-902 (La.App. 5 Cir. 6/27/13), 121 So.3d 128. The trial court’s denial of a motion to suppress is afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Bellow, 07-824 (La.App. 5 Cir. 3/11/08), 982 So.2d 826, 829.
In the instant ease, the testimony revealed that, a confidential informant, who had always provided reliable information, gave predictive information to Detective Biondolillo regarding the suspect and his clothing, his vehicle, the date and time that the suspect would arrive at a specific location, and even where the suspect would be carrying narcotics on his person. Detective Biondolillo corroborated each detail. Thus, we find that there was sufficient reasonable suspicion to justify the investigatory stop. See, State v. Nelson, supra.
In his second assignment of error, defendant argues that Detective Biondolil-lo lacked reasonable suspicion to detain defendant, and, therefore, the subsequent pat-down was illegal and the heroin seized from his person should be suppressed. The State argues, however, that the limited frisk in this case was conducted pursuant to a valid stop and that the connection between weapons and drugs justified a reasonable belief by Biondolillo that defendant may be armed.
|RHaving already found that the officers articulated sufficient reasonable suspicion to conduct a brief investigatory stop, the question is now whether the detention and subsequent frisk exceeded the law.
As a general principle, inherent in the right to conduct a Terry stop is the right of law enforcement officers to use reasonable force to effectuate the detention. State v. Turner, 12-855 (La.App. 5 Cir. 5/16/13), 118 So.3d 1186, 1192. The use of handcuffs to effect the detention of *129 a defendant does not necessarily elevate the detention into an arrest. Id.
To show that a detention involving the use of handcuffs did not exceed the limits of a Terry stop, the State must show some fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing the law enforcement officers, the public, or the suspect himself to an undue risk of harm. Id. It is long established that drugs, guns and violence often go together, and, thus, this may be a factor tending to support an officer’s claim of reasonableness. State v. Porche, 06-0312 (La.11/29/06), 943 So.2d 335, 340; State v. Thomas, 08-521 (La.App. 5 Cir. 1/27/09), 8 So.3d 646, 653, writ denied, 09-0391 (La.12/18/09), 23 So.3d 928.
An officer’s right to conduct a protective frisk is codified in La.C.Cr.P. art. 215.1(B), which provides that “[w]hen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon.” The reasonableness of a frisk conducted as part of a lawful investigatory stop is governed by an objective standard. State v. Dumas, 00-0862 (La.5/04/01), 786 So.2d 80, 81.
The relevant question is “whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was |3in danger.” Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. 1868; Dumas, 786 So.2d at 82. In determining the lawfulness of an officer’s frisk of a suspect, courts must give due weight, not to an officer’s “inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” Terry, 392 U.S. at 21, 88 S.Ct. 1868.
Under the totality of the circumstances, we find the officer had a reasonable, objective and particularized basis for not only handcuffing, but also conducting a pat-down frisk of defendant. Here, defendant was apprehended at 3:00 p.m. in a public, convenience store on his way to allegedly deliver heroin to a person in the store. Knowing that those people that hold drugs often carry weapons coupled with the risk to the convenience store’s customers, the officers, and defendant, the officers were justified in handcuffing defendant at the outset of the detention and conducting a pat-down for weapons.
Based on the foregoing, we find no error in the trial court’s finding that the State bore its burden to establish the admissibility of evidence seized without a warrant. Finding no error in that denial, we find no merit in defendant’s assigned errors.

Error Patent Discussion

Pursuant to La.C.Cr.P. art. 920, we have reviewed the record for errors patent and note one error that requires correction. The record reveals a discrepancy between the transcript and the minute entry of the multiple offender sentencing. While the transcript indicates that defendant’s enhanced sentence under La. R.S. 15:529.1 contains no restriction on parole, the commitment reflects that the sentence is to be served “without benefit of parole, probation, or suspension of sentence.” The transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand this matter to the district court to amend the minute | inentry/commitment to delete the reference to parole ineligibility. State v. Froiland, 05-138 (La.App. 5 Cir. 7/26/05), 910 So.2d 956. Further, we order the district court to transmit the original of the corrected commitment to the officer in charge *130 of the institution to which the defendant has been sentenced and the Department of Correction’s Legal Department. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam).

Conclusion

Based on the foregoing, we affirm defendant’s conviction and sentence and, due to an error patent, remand for correction of the commitment.

AFFIRMED; REMANDED FOR CORRECTION OF THE COMMITMENT.